# ROMAN, etc. v SCHEEL, etc., et al.

## Case No. 85-840-CA-01

Nineteenth Judicial Circuit, St. Lucie County

June 22, 1987

## APPEARANCES OF COUNSEL

**Mark Clark** for plaintiff.

**George Moss** for defendant Dr. Scheel.

**Rosemary Cooney** for defendant Lawnwood Medical Center.

## OPINION OF THE COURT

MARTHA C. WARNER, Circuit Judge.

THIS CAUSE, coming before the Court on the Defendant's Motion to Strike and to Dismiss Plaintiff's Third Amended Complaint and the court having reviewed the pleadings and the memorandums of law submitted by the defendant and the plaintiff, the court orders as follows:

1. As to Count I the motion is denied.

2. As to Counts II and III these counts attempt to state causes of action against the hospital for breach of implied warranty and on a strict liability theory. The facts of this case as set forth in the complaint allege that on April 1, 1984 the plaintiff's decedent was admitted to the hospital and underwent surgery. During the surgery suture material was supplied by the hospital which suture material the plaintiff alleges was defective and caused injury and ultimately the death of the plaintiff. Counts II and III of the plaintiff's third amended complaint state causes of action for a breach of implied warranty and strict liability.

Both the theories of implied warranty and strict liability are predicated upon the defendant's relationship to the alleged defective product and in both cases what is required is the sale of a product. While there are no Florida cases on point, the national trend has been not to hold hospitals, medical doctors and other professionals who provide health case services strictly liable even when, in the course of rendering care services, defective products are transmitted. As noted in *Prosser, Law on Torts,* (Fifth Edition):

> They are not regarded as the kind of enterprisers, akin to the producer of mass products, that can conveniently bear the cost of accidents attributable to defective things used and transmitted. Moreover, the principal thing bargained for is not the product transmitted but the professional services of the defendant. It should be said that drawing the line between professionals and non-professional services is not always easy and perhaps in the final analysis, the real question is whether or not the service provider is the kind of enterpriser who ought, in public interest, to be strictly accountable

for harm resulting from the defects in things transmitted in the course of rendering services.

See *Magrine v. Krasnicka,* 53 N.J. 259, 250 A2d 129 (1969). Here, a dentist was not held strictly liable for personal injuries caused by the breakage of a hypodermic needle in the patient's jaw as a result of a latent defect in the needle. The court noted that if the principles of products liability were adopted and applied to the dentist, they should then apply to any user of a defective article. "No policy consideration positing strict liability justifies application of the doctrine in such cases." The court noted that to so apply the doctrine would "add an irrational consequence to the laudable progress thus far achieved in this field of tort law."

Likewise, under a breach of warranty theory the surgical insertion of a pacemaker machine by a doctor into a patient in a hospital did not constitute a transaction covered by the UCC sales article so as to state a cause of action for breach of warranty against the hospital. *Cutler v. General Electric Company,* 4UCC RS 300 (1967 NY supp.). Even though the patient paid the hospital the cost of the machine the relationship of the seller and purchaser was not created and supplying the machine was only ancillary to the services performed by the hospital. See 43 ALR 3d, Physicians; Hospitals—Strict Liability Section 5.

A majority of jurisdictions which have considered the question across the United States have refused to extend products liability principles to actions against hospitals and physicians on the basis that the defendants are engaged in professional services, not in the business of selling or supplying products. Since both the UCC provisions and section 402(a) of the Restatement of Torts second require a "sale" or that the defendant be ordinarily engaged in the business of "selling", this precluded the service relationship between the doctor and hospital and the patient.

In *Silverhart v. Mt. Zion Hospital,* 20 Cal. App. 3d 1022 (1st Dist. 1971), the court rejected the application of strict liability principles to the hospital and the supplier of a needle which broke during surgery. As the court noted:

A hospital is not ordinarily engaged in the business of selling any of products or equipment it uses in providing such services. The essence of the relationship between the hospital and its patients does not relate essentially to any product or piece of equipment it uses but to the professional services it provides. . . . The needle which was first placed on the market by the manufacturer left the stream of

commerce when it came into the defendant's possession. The needle then became a part of the surgical equipment of the hospital that was made available to surgeons for use in surgical procedures and as to part of the hospital's medical services. In sum, the hospital itself was a *user* of the needle since such needle was supplied to the hospital for its use in performing medical services incident to the normal and ordinary course of the hospital.

Thus, the California appellate court rejected the notion that the hospital became a seller engaged in the business of selling needles in furnishing a surgical needle.

Similarly, in *Vergott v. Deseret Pharmaceutical Co.,* 463 F.2d 12 (5th C.A. Tex. 1972), the court held that the hospital could not be held liable for strict liability in supplying a defective product because the hospital was not a seller engaged in the business of selling a catheter which broke after being placed in a patient's arm.

In *Hoven v. Kelble,* 256 N.W.2d 379 (Wisc. 2977), the Wisconsin Supreme Court held that the doctrine of strict liability was not applicable to the delivery of medical services. The court noted that, "Moving from the malpractice concept . . . to a strict liability system . . . appears to be a dubious move . . . there has been a reluctance to advocate the extension of the principle to medical services."

This court is in accord with the prevailing view that the furnishing of services and supplies incident to those services in a hospital is not a sale for the purposes of a cause of action either for breach of warranty or strict liability. Counts II and III of plaintiff's third amended complaint fail to state a recognizable cause of action under law and are therefore hereby dismissed.

DONE AND ORDERED in Chambers in Fort Pierce, St. Lucie County, Florida, this 22nd day of June, 1987.

### ORDER ON REHEARING

THIS CAUSE has come before the Court on the memorandum of law in opposition of the defendant's motion to dismiss. The court is treating this memorandum of law as a motion for rehearing of its order of dismissal dated June 22, 1987. Having reviewed the pleadings and the memorandums it appears that the Court inadvertently ruled on this case prior to receiving the plaintiff's memorandum in opposition. Therefore, in fairness to the plaintiff, the Court has reconsidered its opinion and reviewed the plaintiff's memorandum in opposition of the motion to dismiss.

Nevertheless, based upon that memorandum, the court has done

46

additional research and has found several cases in Florida which support the original order of dismissal for failure to state a cause of action. Specifically in *Russell v. Community Blood Bank,* 185 So.2d 749 (Fla. 2d DCA 1966), the court held that the transfer of blood by a hospital was a service and not a sale and therefore a cause of action sounding in breach of implied warranty did not state a cause of action. The *Russell* court cited with approval *Perlmutter v. Beth David Hospital,* 308 N.W. 100, 123 N.E. 2d 792 (1954) which states in part:

> It was not for blood—or iodine or bandages—for which plaintiff bargained but the wherewithal of the hospital staff and the availability of the hospital facilities to provide whatever medical treatment was considered advisable. The conclusion is evident that the furnishing of blood was only an incidental and very secondary adjunct to the services performed by the hospital, and, therefore, was not within the provisions of the sales act. . . . The Supreme Court reviewed *Russell* on certiorari jurisdiction at 196 So.2d 115 (Fla. 1967). Although it reversed the District Court of Appeal with respect to a motion to dismiss concerning the blood bank itself, it did not disturb the holding with respect to the hospital.

That same year the Third District decided *Hoder v. Sayet,* 196 So.2d 205 (3d DCA 1967). Again the court held that the transfer of blood by a hospital to a patient is generally considered a service as opposed to a sale and an allegation of a breach of implied warranty in such transferring of blood does not state a cause of action against the hospital.

These cases therefore support the opinion of this court that the hospital is not a seller of products to which the theories of implied warranty and strict liability should apply. Therefore, based upon the foregoing and the previous order of this court, the motion for rehearing is hereby denied.

DONE AND ORDERED this 13th day of July, 1987 in Fort Pierce, St. Lucie County, Florida.