463 F.2d 12
 Maria Elena VERGOTT, et vir, Plaintiffs-Appellees,
v.
DESERET PHARMACEUTICAL COMPANY, INC., Defendant-Appellant,
C. R. Bard, Inc., Defendant-Appellee, Sisters of Mercy of
the Union of the United States of America, Province of St.
Louis, Inc., d/b/a Mercy Hospital, Defendant-Appellee.
 No. 71-3327.
 United States Court of Appeals,
 Fifth Circuit.
 July 5, 1972.
Rehearing Denied July 28, 1972.
 
 Thomas G. Sharpe, Jr., Brownsville, Tex., Finis E. Cowan, Houston, Tex., for defendant-appellant; Baker & Botts, Houston, Tex., of counsel.
 Gary Gurwitz, McAllen, Tex., for Bard.
 Gordon L. Briscoe, Harlingen, Tex., Philip K. Maxwell, Corpus Christi, Tex., Adams, Graham, Lewis, Jenkins & Graham, McAllen, Tex., Cox, Wilson, Duncan & Black, Brownsville, Tex., for Sisters of Mercy etc.
 William R. Edwards, Edwards & De Anda, Corpus Christi, Tex., John E. Fitzgibbon, Laredo, Tex., for Vergott.
 Before DYER, Circuit Judge, SKELTON, Judge,* and INGRAHAM, Circuit Judge.
 DYER, Circuit Judge:
 
 
 1
 In this diversity case a jury found Deseret Pharmaceutical Company liable for the manufacture of a defective intracath needle which caused a catheter to break off in a vein in Vergott's arm. The jury also found that the negligence of the nurse that performed the procedure, an employee of Mercy Hospital, a third party defendant, was not a proximate cause of Vergott's injuries. The court directed a verdict for Bard, the other third party defendant, who purchased and distributed the intracath needle, and denied Deseret's pleas for contribution. Deseret appeals. We affirm.
 
 
 2
 While Mrs. Vergott was a patient in Mercy Hospital in Brownsville, Texas, it became necessary to give her fluids intravenously. To accomplish this a registered nurse used a Bardic-Deseret intracath which had been assembled by Deseret and packaged and distributed by Bard. As the needle of the intracath was being extracted a portion of the catheter broke off in Vergott's vein and was carried through the veinous system until it lodged in the right atrium of her heart causing serious injury that necessitated open heart surgery.
 
 
 3
 An intracath unit consists of a needle through which a plastic catheter is inserted into the vein once the needle punctures the skin and protrudes into the vein. Once the catheter has been threaded into the vein, the needle is extracted so that only the catheter is left in the patient's arm. The catheter is then connected to a tube from a bottle of solution which allows the fluid to flow through the catheter directly into the vein.
 
 
 4
 The administering nurse did not follow the sequence of steps as shown and explained in the instructions. She attached the tube from the I.V. bottle to the intracath device prior to extracting the needle from the patient's vein. When she observed that the solution was running into the vein she removed the needle and a portion of the catheter by applying slight pressure with a sterile cotton pledget over the puncture with her left hand and gently withdrew the needle with her right hand. While the needle was being withdrawn the catheter parted.
 
 
 5
 Vergott brought suit in the state court against the Sisters of Mercy of the Union in the United States of America, Province of St. Louis, Inc. d/b/a Mercy Hospital, alleging that the nurse had negligently allowed the catheter to break in her arm. The Hospital removed the case and filed a third party complaint against Deseret, Bard, and the American Hospital Supply Corp.[1] Vergott then joined Deseret, Bard, and American Hospital as defendants. After extensive discovery Vergott dismissed Bard, Mercy Hospital, and American Hospital but Deseret kept Mercy Hospital and Bard in the case as third party defendants.
 
 
 6
 At trial Vergott contended that the heel of the needle was too sharp, that it was unreasonably dangerous, and that it was not reasonably fit for the purposes intended. Deseret alternatively defended on the ground that there was no defect in the needle's physical qualities, that Bard was negligent in failing to include adequate instructions in its distribution of the intracath, and that the negligence of the nurse was the proximate cause of the catheter breaking. It also contended that if there was a defect in the needle it was caused by Bard's mishandling.
 
 
 7
 At the close of all the evidence the district court granted Bard's motion for an instructed verdict, finding no evidence that Bard mishandled or in any other way caused the defect in the needle or that the instructions were inadequate.
 
 
 8
 The jury, in answer to special interrogatories, found that the intracath was not reasonably fit for its intended use and that this was the proximate cause of Vergott's injuries. It found the nurse negligent in her use of the intracath but exonerated her employer, Mercy Hospital, by finding that the nurse's negligence was not a proximate cause of the injuries. Thus the full award of damages was visited solely upon Deseret.
 
 
 9
 We are faced with an avalanche of errors asserted by Deseret, some of which were raised below and many of which are raised for the first time on appeal. In essence the claimed errors are: (1) the directed verdict in favor of Bard; (2) the failure of the court to hold that the nurse's negligence was a proximate cause as a matter of law; (3) the failure of the court to hold Bard and Mercy Hospital jointly liable under the strict liability doctrine of Restatement (Second) of Torts Sec. 402A; (4) the failure of the court to grant a new trial to Deseret because the alignment of the parties denied it a fair trial; (5) the error of the court in admitting into evidence over objection drawings of the intracath needle; (6) the prejudicial demeanor of the trial judge prevented Deseret from obtaining a fair trial; and finally (7) Deseret's liability for the amount of the judgment should be credited with any amounts paid by Mercy Hospital and Bard to Vergott to prevent a double recovery.
 
 The Directed Verdict
 
 10
 Deseret's third party action against Bard had a two prong premise; that Bard mishandled or somehow caused the needle to become defective, and that it failed to include adequate warnings or instructions with the intracath unit. The record is bare of any evidence to support these contentions. Consequently, the district court did not err in granting the motion for a directed verdict.[2] There was no evidence upon which reasonable men could arrive at a contrary finding. Alman Bros., etc. v. Diamond Laboratories, Inc., 5 Cir. 1971, 437 F.2d 1295, 1298; Boeing v. Shipman, 5 Cir. 1969, 411 F.2d 365, 374 (en banc).
 
 The Nurse's Negligence
 
 11
 Deseret argues that, as a matter of law, the negligence of the nurse was a proximate cause of Vergott's injuries. This, of course, is tantamount to saying that the evidence was insufficient to take the case to the jury. The short answer to this is that we will not review the sufficiency of the evidence when no motion for a directed verdict was made in the trial court. Hommel v. Jackson-Atlantic, Inc., 5 Cir. 1971, 438 F.2d 307, 309; 9 Wright and Miller, Federal Practice and Procedure Sec. 2536, p. 593 (1971). Deseret made no such motion below.[3]Applicability of Sec. 402A to Mercy Hospital and Bard
 
 
 12
 Deseret contends that Mercy Hospital and Bard are liable as joint tort feasors because in Texas Sec. 402A of the Restatement (Second) of Torts is applicable under McKisson v. Sales Affiliates, Inc., Tex.1967, 416 S.W.2d 787. Section 402A provides:
 
 
 13
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or his property is subject to liability for physical harm thereby caused to the ultimate consumer, or to his property, if
 
 
 14
 (a) the seller is engaged in the business of selling such a product, and
 
 
 15
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 
 
 16
 (2) The rule stated in subsection (1) applies although
 
 
 17
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 
 
 18
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
 
 
 19
 Although we are not at all sure that this contention was presented below in the pleadings, pre-trial order, during the course of the trial, or in the motion for new trial, we resolve the doubt in favor of Deseret and hold that the point was sufficiently raised in the court below.[4]
 
 
 20
 McKisson cannot be read to compel an application of Sec. 402A to hold Bard and Mercy Hospital liable as third party tortfeasors.[5] Assuming its applicability for the purpose of determining indemnity or contribution issues among the third party plaintiffs and defendants, Deseret stands to gain nothing.
 
 
 21
 Neither Bard nor Mercy Hospital breached a duty that either owed to Deseret. Deseret is therefore not entitled to indemnification. Wheeler v. Glazer, 1941, 137 Tex. 341, 153 S.W.2d 449, 451-452. On the contrary, Deseret breached a duty it owed to Bard and Mercy Hospital to sell them an intracath unit that was reasonably fit for its intended use. See Jacobs v. Technical Chemical Co., 472 S.W.2d 191, 200 (Tex. Civ.App.--Houston 14th Dist. 1971), rev'd on other grounds, Tex.1972, 480 S.W.2d 602; See also Coca Cola Bottling Co. of Houston v. Hobart, 423 S.W. 2d 118, 125 (Tex.Civ.App.--Houston 14th Dist. 1967, writ ref'd n. r. e.).
 
 
 22
 Parallel reasoning also bars Deseret's claim for contribution. Under Vernon's Tex.Civ.Stat.Ann. art. 2212 (1971) contribution is not available to Deseret because Bard and Mercy Hospital would be entitled to indemnification at common law against Deseret.[6] Renfro Drug Co. v. Lewis, 1950, 149 Tex. 507, 235 S.W.2d 609, 622-623; Austin Road Co. v. Pope, 1949, 147 Tex. 430, 216 S.W.2d 563, 565. Deseret is solely liable for the judgment.
 
 Admission of the Drawings
 
 23
 Vergott introduced a large drawing of the intracath needle and two other "blow up" drawings. Deseret objected to the basic drawing on the ground that it incorporated some specification modifications, dated October 1970, that were made after the injury occurred. The court admitted the drawings, but only after granting Deseret the opportunity to show in what respect the drawings did not conform to the specifications in existence at the time of the injury. Deseret made no such showing. The drawings were properly admitted over this objection.
 
 
 24
 On appeal Deseret argues that the drawings were erroneously admitted for the additional reasons that they were prepared after the injury, that they incorporated post accident safety measures, and that they portrayed a perfectly rounded beveled heel while the specifications do not call for this. The short answer is that we decline to entertain or pass upon errors not presented to the trial court and which are raised for the first time on appeal. Jenkins v. General Motors Corp., 5 Cir. 1971, 446 F.2d 377, 383.
 
 
 25
 Posture of the Parties and the Fairness of the Trial
 
 
 26
 This issue came to light for the first time in Deseret's motion for a new trial. We consider it but find that it lacks merit. Deseret claims that counsel for Vergott, Bard, and Mercy Hospital ganged up on Deseret and were hostile. This is evidenced, Deseret argues, by the fact that all three opposing counsel cross examined each witness in an effort to create a factual atmosphere as prejudicial as possible to Deseret. Our review of the record convinces us that this specification of error is without merit. After Vergott dismissed Bard and Mercy Hospital they remained in the case as third party defendants to Deseret's claims against them. Deseret did not move for a continuance, seek a severance of the third party claims from the case in chief, dismiss its own third party claims, or object to a single question propounded by counsel for Bard or Mercy Hospital on the grounds of double teaming or that it was being denied a fair trial. We have searched in vain to find interrogation by counsel for Bard and Mercy Hospital that was not relevant to protecting their positions as third party defendants.
 
 
 27
 Deseret's reliance upon Palestine Contractors, Inc. v. Perkins, Tex.1964, 386 S.W.2d 764, 774, and McMullen v. Coleman, 135 S.W.2d 776 (Tex.Civ.App.--Waco 1940, writ ref'd n. r. e.) is misplaced. In Palestine the issue was not discussed and the error, if any, was regarded as harmless. In McMullen the court found that the presentation of the case to the jury was manifestly unfair because plaintiff's attorney argued that he was convinced that the settling co-defendant was not guilty of negligence and urged the jury to acquit him of any negligence.
 
 Trial Judge's Questions and Remarks
 
 28
 Deseret complains, for the first time on appeal, that the trial judge's examination of the witnesses and remarks so prejudiced it in the eyes of the jury that it was denied a fair trial. We reiterate, we decline to review errors not presented to the trial court. Dennis v. Central Gulf Steamship Corp., 5 Cir. 1971, 453 F.2d 137, 141; Louisiana & Arkansas Ry. Co. v. Johnson, 5 Cir. 1954, 214 F.2d 290, 292.
 
 Double Recovery
 
 29
 We need not pause long concerning the oblique argument Deseret makes that a settlement was allegedly made by Vergott with Bard and Mercy Hospital, and therefore the judgment against it must be credited with the settlement amount. Unless this is required, Deseret argues, Vergott will enjoy a "double recovery." Again, this specification of error is raised for the first time on appeal.
 
 
 30
 There is nothing in the record pertaining to a settlement or agreement except a motion in limine by the plaintiff that this was irrelevant to Deseret's liability and a remark by the court that "this is some side deal that you all had that I have no control over or anything to do with." These vague references are insufficient to establish the existence of a settlement much less the terms or amounts involved that would establish a double recovery. The burden is on one seeking credit to show what was received by the plaintiff in settlement with another defendant. See Harrington v. Texaco, Inc., 5 Cir. 1964, 339 F.2d 814, 820. We cannot act on the appellate level without a record or an objection. We have neither here.
 
 
 31
 The judgment of the district court is in all respects affirmed.
 
 
 
 *
 Judge Byron G. Skelton, U. S. Court of Claims, sitting by designation
 
 
 [1]
 American Hospital Supply Corp. was the party that sold the intracath to Mercy Hospital
 
 
 [2]
 We also agree with Bard that Deseret's counsel waived any contention that Bard failed to include adequate instructions. Laird v. Air Carrier Engine Service, 5 Cir. 1959, 263 F.2d 948, 953
 
 
 [3]
 We are unimpressed with Deseret's argument that Mercy Hospital is bound by the testimony of one of its experts, Flanagan, the thrust of which was that a minor rearward movement, such as the one that cut the catheter here, was not at all uncommon when using an intracath. Deseret maintains that this proves proximate cause as a matter of law. We cannot be sure whether a rearward movement or a reversing of two steps in the instructions was the negligence found by the jury. In any event, there was other expert evidence that a rearward movement would not have caused the catheter to part if a good needle had been used
 
 
 [4]
 Deseret made no attempt to have the factual issues upon which this theory is bottomed, submitted to the jury, i. e., were Bard and Mercy Hospital engaged in the business of selling the product and that the product was expected to and did reach the user in the condition in which it was sold. Even if these issues were uncontroverted or the evidence conclusively established them, Deseret made no effort to have Bard or Mercy Hospital included in the judgment under this theory
 
 
 [5]
 Even if Sec. 402A is applicable, a hospital is not a seller engaged in the business of selling the product. Cf. Perlmutter v. Beth David Hospital, 1954, 308 N.Y. 100, 123 N.E.2d 792
 
 
 [6]
 Art. 2212 provides, in part:
 Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his codefendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment . . . .