UNITED STATES of America,
Plaintiff-Appellee,

v.

Donel Eston WILLIAMS, Garry Allison
Williams and Richard Dow Williams,
Defendants-Appellants.

No. 76–4390.

United States Court of Appeals,
Fifth Circuit.

Jan. 19, 1978.

Peter A. Chapin, Washington, D. C., for defendants-appellants.

J. A. Canales, U. S. Atty., Anna E. Stool, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., John Patrick Smith, Asst. U. S. Atty., Brownsville, Tex., for plaintiff-appellee.

Before GOLDBERG and MORGAN, Circuit Judges, and WYZANSKI, Senior District Judge.[*]

WYZANSKI, Senior District Judge:

Garry Allison Williams, Donel Easton Williams, and Richard Dow Williams appeal from sentences imposed on them following their convictions, after a non-jury trial, on Count 1 of an indictment charging them with conspiracy to possess, with intent to distribute, marihuana in violation of Title 21 United States Code, §§ 846 and 841(a)(1). Appellants contend that (1) the trial court's denial of their motion to suppress was improper, (2) the evidence was insufficient to convict, (3) prosecution was barred by plea bargains, and (4) they were denied a fair trial.

The evidence shows that in mid-December 1975 Miller and Kiefer, Special Agents for the Drug Enforcement Administration (DEA), had received information from the DEA's Atlanta office that James Anthony (Red) Fuller was en route to the Rio Grande Valley with a large sum of money to purchase marihuana from "Cowen" (later correctly identified as Cowert). Thereafter the DEA agents observed Fuller at Cowert's residence, and then saw them go to the Alamo, Texas residence of appellant Richard Williams. Then the DEA agents discontinued temporarily their surveillance.

On January 5, 1976 DEA Agent Tucker of Nashville informed DEA Agent Miller that marihuana was stored at Richard Williams' Alamo residence, was transported thence to a truck terminal in Amarillo, Texas in large tractor-trailer rigs, (of which one was a blue Peterbilt rig with the name "Strickland" on the door), and then was transported from Amarillo to Tennessee in black or green or burnt-orange pickups, each of which was equipped with a citizens' band radio and a large black metal box capable of holding 500 pounds of marihuana.

DEA agents saw the blue Peterbilt rig at Richard Williams' residence and learned from the license plates carried by the tractor that it was registered in his name as owner.

DEA agents discovered that two other vehicles registered in the name of Richard Williams had been apprehended in the past year in the Rio Grande Valley while transporting marihuana.

On January 14, 1976 DEA agents observed the Peterbilt rig, another rig, and several pickup trucks at Richard Williams' residence. Agent Miller at 9:30 p. m. saw someone back up the Peterbilt rig to loading ramps adjacent to a concrete building at the Williams place, and saw another person drive the burnt-orange pickup truck into the trailer.

At 11:45 p. m. a then unknown person drove the rig in a northerly direction. Agent Miller followed. On his radio he heard the rig's driver, who was later identified as appellant Garry Williams, inquiring from other truckers about the presence of "Smokies" (that is, police officers) and whether the Falfurrias checkpoint was in operation. One trucker informed Garry Williams that a car with "funny antennas" was following Williams. Williams told the trucker that because he was having trouble with his lights he was going to pull into a nearby reststop area. Then the trucker reported to Williams that as Williams drove into the area, the car following him had pulled to the side of the road and its lights had been turned off.

Agents Miller and Kiefer saw Garry Williams unhook the trailer and drive away in the tractor. The agents approached the

---

[*] Senior District Judge for the District of Massachusetts, sitting by designation.

trailer, opened the unlocked door, and found within the trailer the burnt-orange pickup and a black toolbox containing 500 pounds of marihuana. They found another 179 pounds of marihuana in bags in the pickup.

At 4:00 a. m. appellant Garry Williams and John Jared driving a black pickup truck, owned by appellant Donel Williams, followed by Donel Williams himself driving the Peterbilt tractor, entered the rest area. The truck drove through the area several times, apparently checking out all the vehicles and parts of the surrounding area. Then the drivers hooked the trailer to the truck. Whereupon, Agents Miller and Kiefer arrested Garry and Donel Williams and John Jared.

A search warrant having been procured, DEA officers entered the concrete building which was on Richard Williams' property and which had the loading ramps. The agents found 80 burlap bags containing marihuana sweepings and debris in a horse trailer sitting by the concrete building, in the false compartment of another trailer, and in a pickup.

Before turning to the points raised by appellants we must state some other factual aspects of the case.

The three appellants having been arrested, they sought to make plea bargains. They allege four separate bargains. The first is premised upon aid which the appellants say that they gave to enable the DEA to capture Red Fuller. The second is an agreement that all charges against appellants would be dismissed if they procured the capture of two persons in Mexico. The third concerned the prosecutors' promise to make a recommendation with respect to sentencing. The fourth is a supposed agreement by the prosecution to dismiss charges filed against appellants in the Brownsville division and to refile them in the Laredo division.

With respect to those four matters a brief statement will suffice.

As the District Judge found, there is not the slightest evidence that any authorized person representing the prosecution made any promise to appellants contingent on the capture of Fuller.

The District Judge found that the alleged second bargain was indeed made, but that the appellants did not render their expected performance. Nor do appellants contend otherwise.

The District Judge found that the alleged third bargain was made and performed. There is no evidence to the contrary.

The District Judge found that the parties never agreed on the fourth so-called bargain. The record shows that there were discussions, but does not reveal any bargain nor any evidence from which agreement could be inferred.

Other facts which require statement relate to the alleged bias of the trial judge. In appellants' view the District Judge should have disqualified himself, *sua sponte,* because he on May 3, 1976 at a conference in his chambers with respect to appellants' motion for continuance, engaged in the following colloquy with appellants' counsel, Mr. Ross, who was then claiming that the appellants should be given time to apprehend persons in Mexico with respect to whose capture the government and the appellants had made a contingent bargain:

The Court: Then is that going to happen? Am I to leave this case here pending until these guys [the persons sought by the DEA] either come across with heroin or cocaine or they are going to be apprehended on some sealed indictment that you told me has been returned in the Laredo Division of this Court? Is that a deal?

Mr. Ross: Your Honor, I would ask that the case be continued for a reasonable time. I'm not saying that it is going to take 90 days or 30 days for the matter to apprehend them. It could happen in a matter of a week or so.

The Court: If it never happens then these boys will never be prosecuted for what they did. I was just noticing here when I had this hearing on this Motion to Suppress that I overruled it but I wasn't going to write any memorandum until an officer by the name of

Miller testified, and he was out of the state.

Mr. Ross: He was in the hospital.

The Court: Out of the state, in the hospital in Houston someplace. But I had overruled the Motion to Suppress. I made findings from the Bench. I said no Memorandum will be written at this time until officer Miller testifies in the trial of this case, Motion to Suppress will then be carried along with the case. From what I heard these people are criminals and they ought to be prosecuted. Now if the Government wants to make a deal with them fine and dandy with me.

■ The first point made by appellants as a basis for reversing their convictions is that the DEA agents searched the immobile trailer without probable cause, and thus violated the appellants' rights under the Fourth Amendment to the United States Constitution. There is no merit to that contention. This court stated the governing principle in *United States v. Colbert*, 5th Cir., 1973, 474 F.2d 174, 176.

One has no standing to complain of a search or seizure of property he has voluntarily abandoned. . . . Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts . . . The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

Members of this court have never doubted that the principle justifies "a police search of a car that was left on the highway by a fleeing suspect after a high speed chase." See Goldberg J., dissenting in *United States v. Colbert,* supra, at p. 186, citing *Edwards v. United States,* 5th Cir. 1971, 441 F.2d 749. In the case at bar Garry Williams knew he was followed by government officers. His only conceivable purpose in leaving the trailer unguarded and unlocked in the parking area was to rid himself of the vehicle with its incriminating contents. Perhaps, he retained a hope that he might accomplish two objects: the protection of himself from possession of evidence while he was pursued, and the chance of recovery of the trailer if neither the officers nor anyone else took it. Garry Williams was just like the bank robber who having a gun, finds himself pursued, and in his hope of escaping detection throws the gun into a yard— where, if it is not picked up he might retrieve it. Such conduct is transparently an abandonment of the tight grip of ownership and reliance solely on the feeble hope of re-acquisition.

■ Appellants' second point is that there was not sufficient evidence to sustain their convictions. The DEA agents observed Garry Williams and Donel Williams, respectively, during the rig and the Peterbilt tractor which were used in the marihuana operations. The case against them is incontrovertible. Richard Williams is in a different posture. With respect to him all that the evidence shows is that the property where the marihuana was stored belonged to him and that he was the person in whose name the tractor was registered. In itself neither the real property nor the tractor carries a criminal label. An owner of real and personal properties does not commit a crime if he innocently merely allows them to be used by persons who so far as he knows have no criminal purposes. Hence the conviction of Richard Williams must be and is reversed for want of evidence to prove him guilty.

■ The third point raised by appellants is that prior to the trial they entered into plea bargains which barred their prosecution. This raised questions of fact as to whether the claimed bargains were made, and whether the parties lived up to them. Our earlier statement of the facts shows that there was substantial evidence to support the District Judge's findings as to the scope of the bargains and to the extent to which they were and were not performed. We agree with him that there was nothing

in the bargains which barred prosecution. Cf. *United States v. Dixon,* 3rd Cir., 1974, 504 F.2d 69, 72.

■ Appellants' fourth point is that the trial judge was disqualified to conduct the trial because he in the pre-trial showed bias against appellants. No doubt the District Judge's statements were not models of self-restraint. Yet appellants' counsel who heard those remarks in context and had many other opportunities to observe the District Judge not only did not make any objection, but thereafter waived a jury trial and left the case for decision by the judge who had made the comments now criticized. We reject appellants' belated contention because he did not present his objection to the trial court (*Vergott v. Deseret Pharmaceutical Co.,* 5th Cir., 1972, 463 F.2d 12) and also because we do not see a scintilla of evidence that the judge was biased, even if he had been indiscreet.

*Judgments of convictions of Donel Eston Williams and of Garry Allison Williams affirmed; judgment of conviction of Richard Dow Williams reversed with directions to enter in his case a judgment of acquittal.*

GOLDBERG, Circuit Judge, specially concurring.

Although I agree with my brother Wyzanski that the search of the trailer in this case did not violate appellant's fourth amendment rights, I do not agree that the search can be justified under an abandonment theory. *United States v. Colbert,* 474 F.2d 174 (5th Cir. 1973), and *Edwards v. United States,* 441 F.2d 749 (5th Cir. 1971), make clear that abandonment is a question of *intent,* yet Garry Williams' actions in this case do not reflect a single psychic wave of the requisite intent. The trailer was left in a rest area where cars and tractor-trailers presumably were parked all the time. Merely leaving a car or a trailer parked in a rest area cannot mean that one relinquishes "his interest in the property in question so that he [can] no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *United States v. Colbert, supra,* 474 F.2d at 176. That Wil-

liams did not intend to relinquish control of the trailer here is also demonstrated by the fact that he later returned to pick up the trailer. Indeed, all of appellant's actions evidenced an intent to *retain* control of the trailer rather than to abandon it. More importantly, the agents apparently did not believe that appellant intended to relinquish control since they waited for him to return.

The facts of this case are clearly distinguishable from those in *Colbert, supra,* where the defendant left a suitcase on a public sidewalk and then denied ownership. Although I leave any exegetical thesis on the *Colbert* case for another day, even under the principles articulated in that case appellant surely retained a reasonable expectation of privacy with regard to his trailer. Leaving a trailer parked in a rest area presumably designed to provide for tractor-trailer parking is hardly analogous to leaving a suitcase on the sidewalk. Perhaps a more appropriate analogy would be to leaving a suitcase in a locker at a bus station, which hardly would manifest the requisite intent for abandonment. I therefore cannot agree with the majority's conclusion that the doctrine of abandonment applies here. If the abandonment concept is employed with much more abandon, the fourth amendment itself will be abandoned.

I nonetheless concur in the result reached by the majority because I believe that the DEA agents had probable cause to search and that exigent circumstances which justified a warrantless search existed. Probable cause was established by the fact that the DEA agents' information concerning the Williams' modus operandi was corroborated in detail by the agents own observations on the day of the search, *see United States v. Anderson,* 500 F.2d 1311 (5th Cir. 1974), and by the fact that appellant left the trailer behind when he suspected that he was being followed by the police. Furthermore, the risk of Williams returning to remove the trailer constituted sufficient exigent circumstances to justify a warrantless search. *See, e. g. Chambers v. Maroney,* 399 U.S. 42, 48–53, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

In conclusion, I concur only with the result reached by the majority on the issue of the trailer search. I fully concur with the result reached, and reasoning of, the majority opinion on all other issues raised by this appeal.