892 So.2d 272 (2004)
Willie Edward WILLIAMS, Jr. a/k/a Junebug, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00442-COA.
Court of Appeals of Mississippi.
October 26, 2004.
Rehearing Denied January 11, 2005.
*274 William F. Vick, attorney for appellant.
Office of the Attorney General, by Charles W. Maris, attorney for appellee.
EN BANC.
CHANDLER, J., for the Court.
¶ 1. Willie Edward Williams, Jr. was convicted in the Circuit Court of Lauderdale County of the crime of possession of cocaine with intent to distribute. He was thereafter sentenced to serve, as a habitual offender, a term of life in the custody of the Mississippi Department of Corrections. Williams appeals, raising the following issues:

STATEMENT OF THE ISSUES
I. WAS THERE SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE?
II. SHOULD THE TRIAL COURT HAVE GRANTED A MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT?
III. WAS THE SEARCH OF THE AREA SURROUNDING WILLIAMS AND THE SEARCH OF HIS VEHICLE CONSTITUTIONAL?
IV. HAS WILLIAMS MADE A SHOWING OF INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Willie Edward Williams was driving his car in Meridian while drinking gin, when he ran off the road and crashed into two parked cars. Williams asked the owners of the two cars, Katrina Dove and Trudie Stubbs, not to call the police. However, Ms. Dove ignored Williams's request and immediately began to call the police, and as she did so, she saw Williams go back into his car, reach under a speaker box, and retrieve an unidentified object into his pocket. He also retrieved his cell phone, then fled on foot before the police arrived.
¶ 4. Meridian Police Officer Michael Phillips and Detective Andy Havard arrived at the accident. After Ms. Dove and Ms. Stubbs gave the officers a description of Williams, Officer Phillips proceeded in the direction that Williams fled and spotted him approximately two and a half blocks away. Williams stopped when he saw Officer Phillips' car, and Officer Phillips got out to question Williams about the accident. As they talked, Officer Phillips *275 noticed that Williams "was making a lot of eye movement" towards a particular area four or five feet away. Officer Phillips called the police dispatcher for a patrol unit. When Officer Powell of the Meridian Police arrived, the two officers placed Williams in the back seat of Officer Powell's vehicle.
¶ 5. The officers searched the area to which their attention had been drawn by Williams's eye movements and found a large ball of aluminum foil. Inside the foil was a substance that appeared to be crack cocaine. They found a "cookie" of crack cocaine, about 89.42 grams, with a value of approximately $20,000 when broken off and sold on the street. Williams also had $4,383.06 in cash in his possession. The officers went back to the scene of the accident with Williams, and Ms. Dove and Ms. Stubbs identified Williams as the driver of the car that crashed into their vehicles.
¶ 6. There is no indication when or whether Williams was read his rights, but Officer Phillips called Ricky Roberts, a K-9 officer with the Meridian Police Department, to let his dog sniff Williams's car. Williams was not near his car at the time. The dog alerted strongly to the speaker box.
¶ 7. Williams was indicted on the charge of possession of a controlled substance with intent to distribute, as well as with the lesser charge of possession of cocaine. On December 3, 2002, the jury found Williams guilty of possession of cocaine with the intent to distribute.

ANALYSIS

I. WAS THERE SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH THE INTENT TO DISTRIBUTE?
¶ 8. The State was unable to prove that Williams at any time physically possessed the crack cocaine that resulted in his conviction. No drugs or drug paraphernalia were found in Williams's vehicle at the accident scene, no drugs were found on his person, and neither police officer was able to produce Williams's fingerprints on the aluminum foil in which the narcotics in question were packaged. No witnesses could testify that they saw Williams possess or otherwise control the narcotics, and Williams maintained his innocence throughout these proceedings. For these reasons, and as both parties agree, the case against Williams is based on circumstantial evidence, and the State's case hinges on the sufficiency of the proof that Williams constructively possessed the crack cocaine found near where he was standing. "An item is within one's constructive possession when it is subject to his dominion or control. Constructive possession may be established by direct evidence or circumstantial evidence." Keys v. State, 478 So.2d 266, 268 (Miss.1985).
¶ 9. In Powell v. State, 355 So.2d 1378, 1379 (Miss.1978), the Mississippi Supreme Court explained:
The correct rule in this jurisdiction is that one in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles, but the presumption is rebuttable. We have held that where contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband. Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband. Sisk v. State, 290 So.2d 608 (Miss.1974).
*276 Williams submits that he did not have the dominion or control of the crack cocaine because he did not have exclusive possession of the property upon which the narcotics was found. When the police stopped Williams, he was on a city street, and the aluminum foil that contained the crack cocaine was likewise on the ground of a city street. Williams submits that no one could be in exclusive control of a city street. As Powell demonstrates, however, it is not necessary to prove that the premises were in the exclusive possession of the defendant in order to convict under a constructive possession theory. In this case, the State has demonstrated that the arrest occurred early in the morning, when few people would be present on a public street, and the length of time between Williams fleeing the scene of the accident and the police locating the aluminum foil was very short, with little opportunity for anyone to alter the contents of the aluminum foil that had been located. This closeness in time and proximity is an important factor in concluding that Williams was aware of the nature and character of the drugs and exercised dominion and control over the drugs.
¶ 10. The State submits that the following circumstances, all of which the jury considered, show that Williams had constructive possession of the crack cocaine. First, the two women saw Williams go back into his car and retrieve something. Second, Williams fled the scene. Third, the cocaine was within four to five feet of where Officer Phillips saw Williams. Fourth, Williams made eye movements toward the area where the drugs were found. Fifth, Williams had an immediate need to get rid of the cocaine before he got caught with it in his pocket. Sixth, Williams had more than $4,000 in his pocket. Seventh, the drug dog alerted to the area of Williams's car where he was seen removing something a short while earlier. The jury decided that these elements were sufficient to find, beyond a reasonable doubt, that Williams constructively possessed the narcotics. "If there is sufficient evidence to support a verdict of guilty, this Court will not reverse." Meshell v. State, 506 So.2d 989, 991 (Miss.1987). We find it especially important to emphasize that two eyewitnesses saw Williams go into his car and retrieve something. This fact shows to us that there was evidence that Williams exercised dominion and control over the drugs. While no single factor standing alone establishes that Williams had constructive possession of the cocaine, the evidence produced by the State, taken as a whole, is sufficient to support the jury's guilty verdict.
¶ 11. On appeal, Williams presents several fact scenarios that might show that he did not possess the crack cocaine in question. For example, he submits that the narcotics could have been disposed of by some other person, perhaps someone running from the police, or that he could have won the large amount of cash he was carrying at a casino. The reasonable doubt standard the jury was held to does not require the jury to consider every conceivable scenario that might exonerate the defendant. In Pegues v. State, 840 So.2d 721, 726 (¶ 16)(Miss.Ct.App.2002), we explained, "[t]here is sufficient evidence to support a verdict of guilty when there is competent and credible evidence as to each element of the offense which, when taken together with all inferences which reasonably may be drawn from the evidence, and considered in the light most favorable to the prosecution, permits a hypothetical reasonable juror to find the accused guilty beyond a reasonable doubt." (quoting Beard v. State, 812 So.2d 250, 253(¶ 7)) (Miss.Ct.App.2002). We went on to explain that a jury's finding of reasonable doubt should stand, even if another reasonable *277 hypothetical jury could find differently. Id.
¶ 12. Finally, Williams argues that the K-9 dog that identified the narcotics on the speaker box could not differentiate among the narcotics to which he alerts, as Officer Roberts testified that the smell could be marijuana, cocaine, crack cocaine, heroine, or crystal methamphetamines. We are unpersuaded by this argument, as the facts of this case show that the narcotics identified by the K-9 dog could not have been anything other than the crack cocaine for which he was charged. Although the alert from the K-9 drug dog by itself does not establish constructive possession of the cocaine, it is a piece of evidence that the jury was allowed to consider in deciding that Williams was in constructive possession of the drugs. The eyewitnesses saw Williams remove an object from the speaker box of the car; the K-9 dog alerted to the speaker box when he sniffed for drugs. We decline to rule that the alert of a drug dog is irrelevant simply because the alert is unable to conclusively establish that a defendant constructively possessed drugs.

II. SHOULD THE TRIAL COURT HAVE GRANTED A MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT?
¶ 13. The Mississippi Supreme Court has set forth the following standard of review for motions for judgment notwithstanding the verdict:
Our standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict are also identical. Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.
Jackson v. State, 815 So.2d 1196, 1202(¶ 14)(Miss.2002) (citing Coleman v. State, 697 So.2d 777, 787-88 (Miss.1997)). As we have stated, the State presented ample evidence for the jury to decide, beyond a reasonable doubt, that Williams was in constructive possession of the crack cocaine. The circuit court, as well as this Court, is unable to grant motion for judgment notwithstanding the verdict unless the evidence is such that reasonable and fair-minded jurors could only find the defendant not guilty. Alexander v. State, 759 So.2d 411, 421(¶ 36) (Miss.2000) (quoting Gossett v. State, 660 So.2d 1285, 1293 (Miss.1995)). Williams's proposal of scenarios that the jury could have, but did not, consider in rendering a guilty verdict does not create any reason to overturn the jury's verdict. This issue is without merit.

III. WAS THE SEARCH OF THE AREA SURROUNDING WILLIAMS AND THE SEARCH OF HIS VEHICLE CONSTITUTIONAL?
¶ 14. Williams has complained that the search of the area in which he was taken into custody, the opening of the aluminum foil found by the officers, and the search of his vehicle were unconstitutional. However, he did not object at trial to any of this testimony or evidence of which he *278 now seeks to complain. In McNeal v. State, 617 So.2d 999 (Miss.1993), the Mississippi Supreme Court refused to decide McNeal's complaint that the detectives exceeded the scope of their search warrant because McNeal had not brought up the issue at trial level. Id. at 1005 (citing Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990)) (refusing to address the issue because appellant failed to raise the specific issue at the trial level); Brown v. State, 534 So.2d 1019, 1024 (Miss.1988).
¶ 15. The State submits that Williams's search is not an unreasonable search as contemplated by the Fourth Amendment because the evidence was not found on Williams's person, and he cannot claim to have had a reasonable expectation of privacy alongside a public road. We agree. The Mississippi Supreme Court has stated that "generally one does not reasonably expect to keep private that which can be seen by the public." Shook v. State, 552 So.2d 841, 847 (Miss.1989). In Shook, the Court upheld a search around the exterior of the defendant's truck. On this precedent, certainly there is no expectation of privacy on a public street. Also pertinent in this case is the principle of abandonment. By discarding the aluminum foil package, before the police took him into custody, Williams abandoned it and deprived himself of any right to privacy. See California v. Hodari D., 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); Harper v. State, 635 So.2d 864, 867 (Miss.1994); Bessent v. State, 808 So.2d 979, 985-86(¶ 20)(Miss.App.2001). Indeed, the facts of Hodari, in which the defendant abandoned the cocaine he possessed while fleeing from the police, uniquely fit the facts of the case before us. Williams abandoned the crack cocaine before the police took him into custody; it was not the fruit of an illegal seizure.
¶ 16. Williams also argues that Officer Phillips seized the aluminum foil unconstitutionally because he had no reasonable fear that Williams was in a position to destroy evidence. We disagree. Williams had fled the scene of an accident, and he had done so after retrieving something from his wrecked car. On these facts, the police were justified in seizing the aluminum foil without a warrant for fear that the evidence would be destroyed. Courts have consistently held that no warrant is necessary to search for drugs when exigent circumstances exist that make police believe the evidence will be destroyed. Moss v. State, 411 So.2d 90, 95 (Miss.1982).
¶ 17. Finally, we decide Williams's claim that the police should not have been allowed to bring a drug dog to sniff his car. Before Officer Roberts arrived with the dog, Officer Phillips secured Williams and found the cocaine. These facts provide probable cause to conduct a search of the car. The State also submits that Williams, having abandoned his car, wrecked in someone else's yard, had no reasonable expectation of privacy. We agree. In United States v. Williams, 569 F.2d 823 (5th Cir.1978), a truck driver who pulled into a truck stop, unhooked his trailer, and drove off without it after learning that he was being followed by government agents, was held to have abandoned the trailer and its contents. The court stated that the truck driver's only conceivable purpose in leaving the trailer unguarded and unlocked in the parking area had been to rid himself of the vehicle with its incriminating contents, possibly with the hope of recovering it later if no one else took it. Such conduct, the court concluded, was transparently an abandonment of the tight grip of ownership, relying solely on a feeble hope of reacquisition. Id. at 826. The issue is without merit.

*279 IV. HAS WILLIAMS MADE A SHOWING OF INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 18. The substantive issues of law relative to this issue are found in the case of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on the claim of ineffective assistance of counsel, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688, 104 S.Ct. 2052. In addition, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test. Id. at 693, 104 S.Ct. 2052. Instead, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is sufficient to undermine confidence in the outcome. Id. at 694, 104 S.Ct. 2052.
¶ 19. Williams first claims that his trial counsel rendered ineffective assistance by not filing substantive pre-trial motions. He does not identify which pre-trial motions his trial counsel should have filed, thus failing to show either deficient performance or prejudice.
¶ 20. Williams also claims that the trial counsel rendered ineffective assistance in that his trial counsel did not object to the introduction of several items of evidence that should have been excluded, including the following: the warrantless search of Williams's vehicle and the resulting positive alert of Officer Roberts' K-9 dog; the introduction of the aluminum foil; and the introduction of the contents of the foil. As we have already discussed, these items of evidence were admissible. As such, Williams could not have been prejudiced by his counsel's failure to object to such evidence.
¶ 21. Williams next claims that his trial counsel failed to request a jury instruction regarding dominion and control and proximity, despite precedent from the Mississippi Supreme Court that such instructions be given. Williams is referring to the standard proof articulated in Curry v. State, which held as follows:
What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of `possession' is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
Curry v. State, 249 So.2d 414, 416 (Miss.1971), In this case, Williams's trial counsel requested, and the trial court granted, an instruction stating the law of constructive possession. The jury instruction stated, "Where the crack cocaine is not in the actual physical possession of Defendant, there must be sufficient facts to establish beyond a reasonable doubt that the cocaine was subject to the Defendant's dominion or control." This instruction contains the essence of the standard of proof required by Curry to convict under a constructive possession theory.
¶ 22. Williams argues that his trial counsel rendered ineffective assistance in failing to call any witnesses on his behalf. Williams apparently informed his trial counsel that the property on which *280 the narcotics were found was owned by a man Williams knew to be a crack dealer who was in the habit of concealing his drugs in the backyard. Once again, Williams has not shown how this fact demonstrates prejudice. The State has already proven beyond a reasonable doubt that Williams was in constructive possession of the crack cocaine, and the mere fact that the crack cocaine was located in a backyard of someone Williams contends is a drug dealer does not by itself raise an inference the drugs found belonged to someone else. Williams provided no facts to support these accusations and no method by which these accusations would have been admitted at trial. It is highly unlikely that the owner of the property would have confessed to being a drug dealer possessing 89.42 grams of crack cocaine.
¶ 23. Williams next claims that his trial counsel failed to offer as proof any videotape from the Silver Star Casino which may have given an explanation as to why Williams was in possession of such a large amount of cash. Whether some evidence "may have benefitted" Williams is not the standard for ineffective assistance of counsel. The fact that Williams had a large amount of cash in his possession is only one factor that the jury considered, if it had considered this factor at all, in deciding that Williams had constructive possession of crack cocaine. Even if Williams did have a legitimate reason for carrying a large amount of cash, there remained ample evidence to show that Williams had constructive possession of the crack cocaine. Williams has failed to show that this evidence was available at all, and even if it were, Williams has not proven that the introduction of this evidence would have changed the outcome of the case.
¶ 24. Williams next claims that his trial counsel rendered ineffective assistance in failing to ask Ms. Dove or Ms. Stubbs if Williams could have been putting cash into his pocket when they testified that they thought he retrieved something from his vehicle in addition to his cell phone. Williams's efforts to create doubt do nothing to overcome the overwhelming evidence against him.
¶ 25. Williams argues that his trial counsel rendered ineffective assistance in not asking the officers whether or when Williams was informed of his constitutional rights. Whether Williams received his Miranda rights is irrelevant in this case because he was never interrogated while in police custody. The evidence presented in this case was admissible without the police officers' reading Williams his rights. There was no reason to ask the police officers whether they advised Williams of his Miranda rights.
¶ 26. Finally, Williams claims that his trial counsel rendered ineffective assistance in that he counseled Williams not to testify on his own behalf because the State might have questioned him about prior convictions. Williams did have the option of testifying. After extensive questioning and explaining by the trial court, Williams chose not to testify. The record is clear. Williams knew he had the right to testify; he knew the likely risks of not testifying outweighed the possible advantages and opted to forego this option. We find Williams's claim of ineffective assistance of counsel to be without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF LIFE WITHOUT POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF *281 THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS AND BARNES, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, J. ISHEE, J., NOT PARTICIPATING.
KING, C.J., DISSENTING.
¶ 28. With appropriate regard for the majority, I dissent.
¶ 29. Williams was found guilty of possession of crack cocaine with the intent to distribute. There was no evidence of actual possession, so the majority relies on constructive possession. Constructive possession may be shown by proof that the drugs were subject to the defendant's dominion and control. Mere proximity, absent other evidence, is not sufficient to establish constructive possession. Hamm v. State, 735 So.2d 1025(¶ 11) (Miss.1999).
¶ 30. In this case the proof that relates to constructive possession, can be reduced to the following: (1) Officer Phillips was looking for Williams, who he saw walking in a northerly direction approximately two blocks from the accident site; (2) Williams stopped upon seeing Officer Phillips; (3) Officer Phillips detained Williams to take him to the accident site for identification purposes; (4) Officer Phillips' vehicle lacked a security screen, therefore, he called for a second vehicle to transport Williams; (5) as they waited for the transport vehicle, Williams stood to the north of Officer Phillips; (6) Officer Phillips said that during that time, Williams was "making a lot of eye movement, you know back and forth, back and forth,"; and (7) Officer Phillips searched through a pile of debris, on the right shoulder of the public road, approximately four to five feet from where he detained Williams, and found a large quantity of crack cocaine.
¶ 31. None of these things placed Williams in possession of the drugs. Likewise, there is no evidence that Williams was aware of the nature and character of the drugs found in the pile of trash, or that he exercised any dominion and control over the drugs. While Officer Phillips may have strongly suspected that the drugs belonged to Williams, mere suspicion was not enough to support a conviction. Stringfield v. State, 588 So.2d 438, 440 (Miss.1991).
¶ 32. As a part of its validation of this conviction, the majority notes that a drug dog gave an alert when brought in to check Williams' vehicle. However, a look at the essence of the drug dog evidence indicates that it does not establish any constructive possession by Williams.
¶ 33. The K-9 officer responsible for the drug dog indicated that neither actual drugs, nor any physical evidence of drugs was found in Williams' vehicle. He therefore concluded that what the dog alerted to was the odor of drugs in the vehicle. The K-9 officer noted that the dog was trained to sniff for several types of drugs, so that it was impossible to tell to what drug the dog might have alerted in Williams' vehicle. He also noted that it was impossible to determine how long any drug odor might have been present in Williams' vehicle, saying it might well have been present any where from a few minutes to several weeks.
¶ 34. As can be expected, the majority takes exception to the position expressed in the dissenting opinion.
¶ 35. The majority states, "We find it especially important to emphasize that two eyewitnesses saw Williams go into his car and retrieve something. This fact shows to us that there was evidence that Williams exercised dominion and control over the drugs." Contrary to the majority's *282 assertion, this does not provide evidence that Williams exercised dominion and control over the drugs found in the pile of debris on the street. Indeed the witnesses testified that while Williams went back into the car, they never saw what he retrieved. Such a self-authenticating proposition, as that set forth by the majority, can only be proof of dominion and control over the drugs if you assume from the outset that Williams was in possession of drugs.
¶ 36. Consistent with its use of self-authenticating statements to establish dominion and control, the majority also states, "Williams had an immediate need to get rid of the cocaine before he got caught with it in his pocket." The majority's presumption that Williams had drugs in his pocket is not proof that he in fact exercised dominion and control over drugs found in a pile of debris on a public street.
¶ 37. The majority notes as proof of Williams' dominion and control that he had over $4,000 in his possession. While the possession of that sum of money may raise a question, it in no way ties Williams to the drugs found on the street. This is particularly true where his explanation as to how it came into his possession was not implausible, and was not contradicted.
¶ 38. The evidence in this record fails to demonstrate that Williams exercised any dominion and control over the drugs. Under these facts, there was not sufficient proof of constructive possession.
¶ 39. I therefore dissent and would reverse and render the conviction.
IRVING, J., JOINS THIS OPINION.