[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

12-15817
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cr-00029-SDM-EAJ-1


UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

STEVEN FALSEY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 20, 2014)

Before CARNES, Chief Judge, DUBINA and SILER,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

The government appeals the district court's order granting Steven Falsey's motion to suppress drugs found during an inventory search of his car. The government contends that Falsey had abandoned the car before the police officers seized it and conducted the inventory search and therefore he had no reasonable expectation of privacy.

## I.

The material facts of this case are undisputed. Around 4:00 a.m. on October 5, 2011, a witness observed a black BMW speed into the parking lot of a business park. The car was traveling at least 50 to 60 miles per hour and the tires were squealing. The witness watched the car drive to the back end of the parking lot and park in a marked parking space. Falsey, who was driving the car, quickly exited it, bent over to pick something up off the ground, and then sprinted off into the woods behind the parking space where he had parked the car.[1] When he sped into the parking lot and then ran off into the woods, Falsey believed the police were pursuing him, but they were not.[2]

---

[1] There is conflicting evidence about whether another person also exited the car and sprinted off into the woods. The district court did not resolve that factual dispute, and it does not matter to the outcome of this appeal.

[2] At the time the police impounded the car and searched it, the officers did not know that Falsey believed that they had been pursuing him when he fled from the car. But that fact is immaterial. In deciding whether personal property has been abandoned, we are not limited to facts within the officers' knowledge at the time they conduct the search. See United States v. Winchester, 916 F.2d 601, 604 (11th Cir.1990) ("[E]vents that occur[ed] after the abandonment may be considered by the court as evidence of the defendant's intent to abandon the property at

The witness called the police to report a suspicious vehicle and two officers arrived on scene about ten minutes later. They observed that the car's engine was off, but the doors were unlocked and a car key was on the passenger-side floorboard. An electronic display on the vehicle's dashboard displayed a message stating that the vehicle had been driven carelessly, but the vehicle appeared to be in good condition. A K-9 officer tried to track the driver but was unsuccessful.

The officers then tried to find out who owned the BMW. They first contacted the registered owner, who told police that he had sold the car for $16,000 two days earlier. Further investigation revealed that Falsey's father had applied for a temporary tag for the vehicle. The police tried to call him and went to his house but were unable to make contact. The officers then entered the vehicle and found a binder on the backseat. The binder contained some papers that had the name of a woman and an address that was close to where the car was parked. They went to that address and knocked on the door, but there was no answer.

About two and a half hours after the police had arrived on scene the lead officer called his supervisor, told her that he considered the car to be abandoned, and asked her what he should do with it. She told him to impound the vehicle and to conduct an inventory search.[3] During the search, the officer discovered a locked

---

the previous time.").

[3] The district court found that the police department's procedures did not authorize the

safe in the trunk of the car.  He called his supervisor to ask her if he should open it, but she told him not to do that.  About an hour later, the car was towed to an impound lot.  The following afternoon, investigators realized that the safe had never been opened and its contents had never been inventoried, even though the police department's procedures required locked containers to be opened during inventory searches of vehicles.   They forced open the safe and found two bags of narcotics inside it.

Falsey was charged with:  (1) conspiring to import Methylone, a controlled substance analogue of MDMA, in violation of 21 U.S.C. §§ 813, 952, 960(b)(3), and 963; (2) conspiracy to possess with intent to distribute Methylone and "DOC," a controlled substance analogue of "DOM," in violation of 21 U.S.C. §§ 813, 841(a)(1), 846, and 960(b)(3); (3) possession with intent to distribute Methylone and DOC, in violation of 18 U.S.C. § 2, 21 U.S.C. §§ 813, and 841(a)(1) and (b)(1)(C); (4) possession with intent to distribute DOC, in violation of 21 U.S.C. §§ 813 and 841(a)(1) and (b)(1)(C); and (5) possession of a firearm by a convicted

---

officers to impound the vehicle or conduct the inventory search under these circumstances.  For that reason, the court concluded that the inventory search violated the Fourth Amendment.  See Colorado v. Bertine, 479 U.S. 367, 374 & n.6, 107 S.Ct. 738, 742 & n.6 (1987) ("Our decisions have always adhered to the requirement that inventories be conducted according to standardized criteria.").  The government does not contest that finding on appeal, but instead contends that Falsey may not challenge the constitutionality of the search because he abandoned the vehicle before it was impounded and searched.  See United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) ("[A]n individual who abandons or denies ownership of personal property may not contest the constitutionality of its subsequent acquisition by the police.")

felon, in violation of 18 U.S.C. § 922(g)(1).  Falsey moved to suppress the drugs that were found in his car.  The district court granted the motion because the impoundment and inventory search were not carried out according to the police department's procedures and were therefore unreasonable.  The government appeals,[4] contending that Falsey had abandoned his car before the police officers searched it, which means that he lacks standing[5] to challenge the constitutionality of the search.[6]

## II.

"The grant or denial of a motion to suppress evidence is reviewed in this Court as a mixed question of law and fact."  United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003).  "We assess the district court's findings of fact under the clearly erroneous standard and review the application of the law to the facts de

---

[4] Counsel for the government certified that this appeal was "not taken for purpose of delay" and that the evidence that was suppressed "is a substantial proof of a fact material in the proceeding" pursuant to 18 U.S.C. § 3731.

[5] During the evidentiary hearing, the government conceded that the fact that Falsey did not own the car did not affect his standing to challenge the constitutionality of the search.  The government never conceded, however, that Falsey had standing because he did not abandon the car.  The government's position before the district court is the same as its position before us: Falsey lacks standing to challenge the constitutionality of the search because he abandoned the car before the search took place.

[6] The government made the abandonment argument to the district court, but the court did not specifically address it in its order.  We can infer, however, that the district court implicitly rejected it when it concluded that the search of the car was unreasonable under the Fourth Amendment.  See United States v. $242,484.00, 389 F.3d 1149, 1154 (11th Cir. 2004) (en banc) (stating that we can infer "from a district court's explicit factual findings and conclusion[s] implied factual findings that are consistent with its judgment although unstated").

novo."  Id.; see also United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) (reviewing de novo the district court's determination that property was abandoned where the facts were undisputed).

Abandonment is primarily "a question of intent, which may be inferred from acts, words and other objective facts."  United States v. Ramos, 12 F.3d 1019, 1022 (11th Cir. 1994) (quotation marks omitted).  In the motion to suppress context, "[t]he issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search."  United States v. Williams, 569 F.2d 823, 826 (5th Cir. 1978).

We conclude that Falsey abandoned the BMW before the police impounded it and conducted the inventory search.  The facts of this case are similar to those in United States v. Edwards, 441 F.2d 749 (5th Cir. 1971), and Williams, 569 F.2d 823, both of which are binding circuit precedent.[7]  In Edwards, our predecessor court held that a defendant abandoned his car, and thereby relinquished his Fourth Amendment rights in it, when he left it on a public road, with the engine running and the keys in the ignition, while he fled on foot from the police.  441 F.2d at 751.

---

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

And in Williams, the court similarly held that a defendant abandoned his trailer when he unhooked it from his truck at a rest stop and then drove away while being pursued by federal agents. 569 F.2d at 824–26. The court explained that the driver knew that he was being followed by the police and "[h]is only conceivable purpose in leaving the trailer unguarded and unlocked in the parking area was to rid himself of the vehicle with its incriminating contents." Id. at 826. The driver "was just like the bank robber who having a gun, finds himself pursued, and in his hope of escaping detection throws the gun into a yard where, if it is not picked up he might retrieve it" later. Id. "Such conduct is transparently an abandonment of the tight grip of ownership and reliance solely on the feeble hope of re-acquisition." Id.

Several of our sister circuits have reached similar results in cases factually similar to this one. See United States v. Smith, 648 F.3d 654, 660 (8th Cir. 2011) (holding that a defendant abandoned his car when he left it open in a public area, with the keys in the ignition and the motor running, as he fled on foot from the police); United States v. Vasquez, 635 F.3d 889, 892, 894 (7th Cir. 2011) (concluding that a defendant abandoned his car when he left it in a Walmart parking lot before fleeing on foot from the police); United States v. Walton, 538 F.2d 1348, 1351, 1354 (8th Cir. 1976) (holding that a defendant "had no standing to complain of [the warrantless] examination and search" of his car, where he left it parked on a public street, with its doors unlocked and its windows down, as he fled

7

from the police); United States v. D'Avanzo, 443 F.2d 1224, 1225–26 (2d Cir. 1971) (upholding a finding of abandonment where the defendant parked the car he was driving on a residential street and then fled from the police into a nearby wooded area).

Falsey, believing that he was being pursued by the police, sped into the parking lot of a business park and then sprinted into the woods, leaving his car unlocked with the key still inside of it. His "only conceivable purpose" for doing so was the same purpose that the driver in Williams had: to disassociate himself from the vehicle and the narcotics that were in it. See Williams, 569 F.2d at 826. The fact that Falsey was mistaken about being pursued by the police, and the fact that he and his father later tried to retrieve the car, do not change our analysis or the result. See id. at 825–26 (finding that the driver had abandoned the trailer notwithstanding the fact that he came back to retrieve it a few hours later). Through his actions, Falsey voluntarily relinquished his interest in the car, such that he no longer had a reasonable expectation of privacy in it or its contents, before it was impounded and searched by the police. See Williams, 569 F.2d at 826; Edwards, 441 F.2d at 751; Vasquez, 635 F.3d at 894; Walton, 538 F.2d at 1354; D'Avanzo, 443 F.2d at 1225–26. That constitutes abandonment as a matter of law, which means that Falsey lacked standing to challenge the constitutionality

8

of the search.[8] See Cofield, 272 F.3d at 1306. The district court erred in

concluding otherwise and in granting the motion to suppress.

**REVERSED AND REMANDED.**[9]

---

[8] United States v. Hall, 716 F.2d 826 (11th Cir. 1983), does not require a different result. That case is distinguishable because the driver of the truck that was searched remained "always in view of the truck" for about one hour after he parked in a parking lot. 716 F.2d at 828. By contrast, in the present case, Falsey immediately fled from the area where he parked the car. Fleeing from the area around a vehicle after parking it is stronger evidence of abandonment than staying in the area of the vehicle for an hour.

[9] This appeal was originally scheduled for oral argument but was removed from the oral argument calendar by unanimous agreement of the panel under 11th Cir. R. 34-3(f).