ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. A DeSoto County Circuit Court jury found John Gales guilty of possessing 250 pills
 
 [1]
 
 containing pseudoephedrine and/or ephedrine knowing, or under circumstances where one reasonably should know, that the pseudoephedrine and/or ephedrine would be used to unlawfully manufacture a controlled substance in violation of Mississippi Code Annotated section 41-29-313 (Rev.2005). Gales was also found guilty of one count of conspiracy to possess pseudoephedrine and/or ephedrine knowing, or under circumstances where one reasonably should know, that the pseu-doephedrine and/or ephedrine would be used to unlawfully manufacture a controlled substance in violation of Mississippi Code Annotated section 97-1-1 (a) (Supp. 2008). Gales was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007) to serve five years for each count, with the sentences to be served consecutively in the custody of the Mississippi Department of Corrections (MDOC) and to pay a fine of $1,000. He appeals, asserting four suggestions of error:
 

 (1) The trial court abused its discretion in allowing the State to present expert testimony regarding the manufacture of methamphetamine.
 

 (2) The trial court erred when it denied Gales’s motion for a new trial.
 

 (3) The trial court erred when it denied Gales’s motion for a judgment notwithstanding the verdict (JNOV).
 

 (4) The trial court erred by allowing the State to present evidence of Gales’s pri- or drug-related conviction.
 

 Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On July 25, 2005, Gales and Denise Horn drove from Des Arc, Arkansas to Horn Lake, Mississippi supposedly to go to a casino and find Horn’s boyfriend. However, along the way, Gales, the driver of Horn’s vehicle, stopped at three or four Walgreens stores in order for Horn to purchase cold medications containing pseu-doephedrine and/or ephedrine.
 
 [2]
 
 Their pseudoephedrine shopping spree ended at the Walgreens located at Highway 51 and Goodman Road in Horn Lake.
 

 ¶ 3. After Horn purchased the medicine containing the pseudoephedrine at the Highway 51 and Goodman Road Wal-greens, pharmacist John Bienvenue called the Horn Lake Police Department and reported Horn’s purchases. Bienvenue had been notified by the employees of other Walgreens stores in the area that Horn had been purchasing the same medi
 
 *69
 
 cine at the other stores. Bienvenue testified that he and other pharmacists and pharmacy employees “were very suspicious of any purchase of pseudoephedrine products.” When purchasing the products, Horn was required to sign a log and present identification at each pharmacy.
 

 ¶ 4. When contacting the Horn Lake police, Bienvenue described Horn as a blonde white female wearing a navy blue shirt and blue jeans. Bienvenue also followed Horn out of the store and noted what kind of car she was getting into, as well as recording the car’s tag number. He reported this information to the Horn Lake Police Department. Officer Robert Riggs was called to the Walgreens, and as he was entering the parking lot, he noticed a woman that matched the description given by Bienvenue sitting in the passenger seat of a white Mazda 626.
 

 ¶ 5. As Officer Riggs entered the store’s parking lot, he observed both Gales and Horn take notice of him. After seeing Gales and Horn, Officer Riggs ran a check on the vehicle’s tag number, and he became aware that the car and the tag number were the same as Bienvenue had reported to the police.
 

 ¶ 6. Officer Riggs followed Gales and Horn after they left the Walgreens parking lot, and while following them, he observed a flurry of movements between the two. Officer Riggs testified that Gales and Horn kept leaning toward each other, and Horn appeared to be leaning over, as if to retrieve something from the floorboard of the passenger side of the vehicle. Gales and Horn continued these movements the entire time Officer Riggs followed them. After following them for a short distance, Officer Riggs pulled them over in the parking lot of a Supervalue store located on Highway 51 in Horn Lake. Horn continued to reach down in front of her.
 

 ¶ 7. As soon as Gales stopped the vehicle, he quickly got out of the vehicle and started walking toward Officer Riggs, but Horn remained in the car. Officer Riggs instructed Gales to get back into the vehicle. Gales had no driver’s license or identification, nor was he able to present a registration for the vehicle. At that time, Officer Riggs instructed Gales to get out of the car again, and Officer Riggs testified that, during this time, Gales was acting very nervous: He was pacing back and forth, raising his arms above his head, and answering questions inappropriately. For example, when Officer Riggs asked Gales where he was from and why he had stopped at Walgreens, Gales quickly answered that he had done nothing wrong, and Officer Riggs could check him and the car. No pills or contraband were found on Gales’s person. It was later learned that the vehicle belonged to Horn.
 

 ¶ 8. During this time, Officer Fikes,
 
 [3]
 
 who was in training with Officer Riggs, was questioning Horn outside the vehicle. Officer Riggs testified that Horn “had what appeared to be some white pills in her hand, and she was ... standing ... [with] her legs tucked together like she was trying to [keep] something from possibly falling ... down her pants.” Officer Riggs gained Horn’s consent to search her, and then, Officer Riggs had Officer Fikes perform the search. He requested that Officer Fikes search Horn because Officer Fikes was a woman. While Officer Fikes was searching Horn, Officer Riggs noticed an abnormal “bulge” in the front of Horn’s pants, and he brought it to Officer Fikes’s attention. The “bulge” turned out to be a white plastic bag containing nearly three hundred white pills. The pills were later determined to contain pseudoephedrine
 
 *70
 
 and/or ephedrine. In addition to the cache of pills found on Horn’s person, the police officers found a pipe used for smoking drugs, more pills on the passenger side floorboard of the vehicle, and empty pill packages or “blister packs,” which normally contain the cold pills, stuffed between the front seats of the car.
 

 ¶ 9. Officer Riggs testified that both Gales and Horn were issued a
 
 Miranda
 
 warning, and they both stated that they understood their rights.
 
 [4]
 
 Officer Riggs further testified that Gales told him that he and Horn had traveled to Mississippi to buy Wal-phed
 
 [5]
 
 to take back to Arkansas, so they could trade it for money or drugs. Officers Shawn May and Todd Baggett, both narcotics agents, were called to the scene. Officer May testified that he too issued a
 
 Miranda
 
 warning before speaking with Gales. Officer Baggett testified that although he did not issue a
 
 Miranda
 
 warning to Gales, he asked Officer Riggs, prior to talking to Gales, whether or not one had been issued; he was informed that one had been issued. Officer Baggett transported Gales to the Horn Lake Police Department.
 

 ¶ 10. While en route to the police station, Gales told Officer Baggett the same thing he told Officer Riggs: that “he came down [to Mississippi] to buy pills to take back to Arkansas.” He went on to tell Officer Baggett that the pills were to trade for money or drugs. In fact, Gales told the police that he was going to receive $100 for driving Horn to Mississippi, and Horn was going to receive methamphetamine. He also told Officer Riggs that Horn Lake was a familiar area for him to purchase pseudoephedrine. Although willing to confess to procuring the pills to take back to Arkansas, Gales told the officers that he was not a methamphetamine
 
 “cook.” At trial,
 
 expert testimony established that “cooks” are those who utilize the pseudoephedrine and/or ephedrine, as well as other precursor chemicals, to manufacture methamphetamine.
 

 ¶ 11. After being arrested, Horn, gave a voluntary written statement to the Horn Lake Police Department concerning her involvement in purchasing the pseu-doephedrine pills. She stated: “I came today to Mississippi to buy Wal-phed to take back to Arkansas to sell [to] someone to make money that [I] needed. Not for the reason to cook them myself.”
 

 ¶ 12. Gales went to trial on the above-stated charges on December 6, 2007. In contradiction to what he told Officers Riggs, May, and Baggett on July 25, 2005, Gales testified that he did not know that Horn was stopping at numerous stores to purchase pseudoephedrine. Rather, he claimed that she asked him to take her to a casino to meet her boyfriend, who was a methamphetamine “cook,” and he stopped at the drug stores for her to purchase medicine she needed for cancer treatment. Gales testified that he began to get suspicious of Horn’s actions after she did not get the medicine she supposedly needed after the two stopped at a second or third Walgreens. Despite the numerous stops and the close proximity of the two, Gales
 
 *71
 
 testified that he was not aware of, nor had he seen, the hundreds of pills Horn purchased. He claimed that she must have been putting them in her large purse.
 

 ¶ 13. Gales testified that he had been a drug addict since he was fifteen or sixteen years old, and that he could be called a “dope fiend.” Gales was thirty-eight at the time of trial. Also, the State entered evidence of Gales’s two prior felony convictions in the Circuit Court of White County, Arkansas, one of which was a conviction of conspiracy to possess drug paraphernalia with intent to manufacture methamphetamine.
 

 ¶ 14. Following a guilty verdict by the jury, a hearing for post-trial motions and sentencing was had on December 17, 2007. Gales filed a motion for a JNOV and a motion for a new trial. The motions were denied on December 17, 2007, and Gales was sentenced to five years for both charges, with the sentences to run consecutively, as well as ordered to pay a $1,000 fine. Aggrieved, Gales now appeals.
 

 ANALYSIS
 

 I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING EXPERT TESTIMONY REGARDING THE MANUFACTURE OF METHAMPHETAMINE.
 

 ¶ 15. Gales argues that the trial court erred by allowing expert testimony regarding the manufacture of methamphetamine. He asserts that it was highly inflammatory and prejudicial, and it did nothing more than confuse, inflame, and prejudice the jury. We disagree.
 

 ¶ 16. “It is well-settled that the admission of expert testimony is within the sound discretion of the trial judge. Furthermore, this Court will not reverse a trial court’s decision to admit expert testimony ‘unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.’ ”
 
 Lima v. State,
 
 7 So.3d 903, 907(¶ 14) (Miss.2009) (citing
 
 Bishop v. State,
 
 982 So.2d 371, 380(¶ 33) (Miss.2008)).
 

 ¶ 17. According to experts, methamphetamine, or crystal meth, is not difficult to make. The ingredients can be taken from widely-available, and otherwise legal, products such as flashlight batteries and non-prescription sinus and cold medications.
 
 Burchfield, v. State,
 
 892 So.2d 191, 193 (¶ 1) (Miss.2004). “This unfortunate fact led our Legislature to enact several laws which, under certain circumstances, criminalize the possession of large quantities of one or more of these ingredients.”
 
 Id.
 
 However, possession alone is not sufficient: The State must prove that Gales knew, or reasonably should have known, that the pseudoephedrine pills were going to be used to unlawfully manufacture a controlled substance. Miss.Code Ann. § 41 — 29—313(1)(a)(I) (Rev.2005).
 
 [6]
 
 The State simply met this burden.
 

 ¶ 18. At trial, Officer Kyle Hodge, who had been a narcotics agent for approximately nine years, was called as an expert to testify about the manufacture of methamphetamine. He described the ingredi
 
 *72
 
 ents and steps necessary to produce methamphetamine. Gales’s counsel objected to the testimony arguing that Gales was not charged with manufacturing methamphetamine, and he argued that any testimony about the manufacture of the drug would be unnecessary and would unfairly prejudice Gales. The objection was overruled, and Gales maintains this argument on appeal. We find, however, that the trial judge did not err in allowing the expert testimony.
 

 ¶ 19. The State correctly asserts that
 
 Burchfield v. State,
 
 892 So.2d 191 (Miss.2004) is directly on point with the case at bar. In
 
 Burchfield,
 
 two defendants, who had also driven from Arkansas to the very same Walgreens in Horn Lake to purchase methamphetamine precursors, made the same argument as Gales concerning expert testimony related to the manufacture of methamphetamine.
 
 Id.
 
 at 195(¶ 12). In
 
 Burchfield,
 
 the supreme court stated that one of the elements necessary for the State to prove was that the defendant knew, or reasonably should have known, that the ephedrine would be used to manufacture a controlled substance.
 
 Id.
 
 at 195-96(¶ 15). In
 
 Burchfield,
 
 the supreme court acknowledged that the expert was properly qualified to provide the testimony regarding the manufacture of methamphetamine, in order to prove that Burchfield knew, or reasonably should have known, that the ephedrine or pseudoephedrine would be used to make an illegal substance.
 
 Id.
 
 The coui't went on to state that the expert went no further than was necessary to demonstrate a link between the pseudoephedrine found in the car and the defendant’s statement that he intended to sell the pills and manufacture a controlled substance.
 
 Id.
 
 Officer Hodge’s testimony in the instant case is the same.
 

 ¶ 20. We have thoroughly evaluated the record, and we have determined that Officer Hodge simply gave a thorough explanation of the four-step process in which methamphetamine “cooks” manufacture the illegal substance. He also explained that, since the laws have changed relating to the purchase of methamphetamine precursors, the “meth cooks” no longer ride around to purchase the items themselves. He testified that it was common for them to pay people to purchase the pills for them. He discussed how “meth cooks” were familiar with the laws that the legislatures of most states have enacted in an attempt to combat the proliferation of methamphetamine labs and production.
 
 [7]
 
 
 *73
 
 He did nothing more than explain some of the actions that transpire in the illegal drug community. However, it appears from the record, Gales and Horn were unaware that Mississippi had enacted its precursor-possession statute, Mississippi Code Annotated section 41-29-313, because they both seemed eager to confess to the possession of pseudoephedrine, but they were emphatic that they were not going to “cook” it themselves. In any event, Gales’s argument concerning the prejudicial nature of the expert testimony virtually mirrors the one made by Burch-field, and just as in
 
 Burchfield,
 
 this assignment of error is without merit.
 

 II. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED GALES’S MOTION FOR A NEW TRIAL.
 

 1121. Gales claims that the jury verdict is against the overwhelming weight of the evidence, and the instant case should be reversed and remanded for a new trial. We disagree. “This Court[] sits as a ‘thirteenth juror’ [when] determining whether a jury verdict is against the overwhelming weight of the evidence.”
 
 Jenkins v. State,
 
 947 So.2d 270, 277(¶ 24) (Miss.2006).
 

 [We must] accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.
 

 Id.
 
 (citation and quotation omitted). Sitting as the thirteenth juror, we will recap the evidence presented to the jury, in order to illustrate that the verdict is not against the overwhelming weight of the evidence.
 

 ¶ 22. The jury heard Bienvenue testily that Horn, Gales’s traveling companion,
 
 [8]
 
 had been to other Walgreens in Horn Lake and purchased medicines that contained pseudoephedrine and/or ephedrine. Bienvenue also testified that he and other pharmacists in the area had become very suspicious of persons purchasing those types of medicines because of the change in the law, which regulated the sale and purchase of those drugs.
 
 [9]
 

 ¶ 23. Following Bienvenue’s testimony, the jury heard Officer Riggs testify that he encountered Gales and Horn shortly after Bienvenue notified the Horn Lake Police Department of Horn’s repeated purchases of pseudoephedrine and/or ephedrine. Officer Riggs testified that he encountered
 
 *74
 
 them in the same vehicle that Bienvenue had reported to the police. Officer Riggs further testified that, while he was following them, he witnessed the two moving about within the car in an unusual manner. Officer Riggs also testified that, immediately after he pulled Gales over, Gales quickly got out of the car and walked toward Officer Riggs’s car, rather than waiting for Officer Riggs to approach his vehicle. However, Horn made no attempt to leave the vehicle. The jury could certainly infer from this behavior that Gales was attempting to provide Horn an opportunity to hide the pills that she had just purchased.
 

 ¶ 24. The jury was told how Gales appeared very nervous, and he was quick to respond to Officer Riggs’s question about why he and Horn were a Walgreens in the Horn Lake area by stating that he had done nothing wrong. Also, Gales was quick to tell Officer Riggs that he could search him and the car, rather than giving a purpose for their presence as Officer Riggs had requested. The jury heard Officer Riggs, Officer May, and Officer Bag-gett testify that Gales admitted to them that he had driven Horn to the area in order to purchase pseudoephedrine to take back to Arkansas to trade for money or drugs.
 

 ¶ 25. The jury heard how there were pseudoephedrine pills strewn about the car in which Gales was found; it is inconsequential that they were found on the passenger’s floorboard rather than the driver’s floorboard. Further, the jury heard how the police found empty “blister packs,” in which the cold pills were normally contained, stuffed between the driver’s seat and the passenger’s seat of the car. The jury heard that Gales’s companion, Horn, was found with a plastic bag containing nearly 300 pills stuffed down the front of her pants. Although Gales testified that he never saw the pills that Horn was purchasing and that she must have been putting them in her large purse, as a hypothetical thirteenth juror, we find that it seems implausible that Gales suffered from such tunnel vision as to not notice Horn popping out approximately 800 pills from their “blister packs,” placing them in a plastic bag, and then stuffing that bag down in the front of her pants, all while seated next to him.
 

 1126. In contradiction to the police officers’ testimonies concerning his statements, Gales testified that he believed Horn was purchasing medicine because she had cancer. However, the jury heard him reluctantly admit that he and Horn, who were residents of and traveling from Arkansas, drove past numerous drug stores before hopping from pharmacy to pharmacy in Horn Lake to purchase cold medicine. In his brief to this Court, Gales argues that the instant case is simply a matter of “he said, he said.” We find this argument unavailing.
 

 ¶ 27. The jury is charged with the duty of assessing the credibility of witnesses.
 
 Thompson ex rel. Thompson v. Lee County Sch. Dist.,
 
 925 So.2d 57, 70(1119) (Miss.2006). Therefore, “[ejonflicting testimony
 
 does not evince ovenvhelming evidence;
 
 [rather][,j ‘where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury’s duty to resolve the conflict.”
 
 Brown v. State,
 
 995 So.2d 698, 702(¶ 18) (Miss.2008) (citing
 
 Nicholson v. State,
 
 523 So.2d 68, 71 (Miss.1988)) (emphasis added).
 

 ¶ 28. The record reveals that the evidence presented to the jury was much more than a “he said, he said” conundrum. In the instant case, the jury heard
 
 three
 
 police officers state under oath that Gales was found in a vehicle with Horn who had an illegal amount of pseudoephedrine and/or ephedrine pills, and Gales admitted
 
 *75
 
 to
 
 each of the officers
 
 that he drove Horn to purchase the pills to sell for the unlawful manufacture of methamphetamine.
 

 ¶ 29. Additionally, the jury received credible testimony about the manufacturing of methamphetamine and also about the activities of drug addicts and manufacturers in the Horn Lake area. Officer May, who stated that he frequently investigates methamphetamine cases, testified that the Horn Lake police had encountered so many problems in the area, that the police had begun to refer to it as “crystal alley.” He explained that this was due to the high number of drug dealers, manufacturers, and/or addicts, who would come to the area to purchase the precursors because there were numerous stores, such as Walgreens, Wal-Mart, and Rite-Aid, where a person could procure everything needed to produce methamphetamine. Officer May discussed how the problem was “so prevalent that ... numerous pharmacy employees ... had [his] cell number, and they would ... just call him personally when they had a suspicious person purchase large amounts of pseu-doephedrine.” He also explained that many of the people the police encountered purchasing precursors in the Horn Lake area were from Arkansas.
 

 ¶ 30. Gales argues that Officer May’s testimony and his reference to the area as “crystal alley” was highly prejudicial, and its admission amounted to error. We disagree. We do not conduct a de novo review on the admissibility of evidence under Mississippi Rule of Evidence 403.
 
 Jones v. State,
 
 904 So.2d 149, 152(¶ 7) (Miss.2005). Rather, “[o]ur review is confined to ‘simply determine whether the trial court abused its discretion in weighing the factors and in admitting or excluding the evidence.’ ”
 
 Hudson v. State,
 
 977 So.2d 344, 347(¶ 17) (Miss.Ct.App.2007) (citing
 
 Jones v. State,
 
 904 So.2d 149, 152(¶ 7) (Miss.2005)). “A Rule 403 analysis asks only that a judge rely on his/her own sound judgment.”
 
 Id.
 
 (Quoting
 
 Jones v. State,
 
 920 So.2d 465, 476-77(¶ 33) (Miss.2006)).
 

 ¶ 31. At trial, Gales’s counsel objected to Officer May’s testimony arguing that it was speculative. The trial judge required the State to lay a foundation for Officer May’s testimony. After that, he allowed the testimony based upon Officer May’s experience as a narcotics officer. Gales’s counsel then had the opportunity to cross-examine Officer May and establish that Officer May had not encountered, nor investigated Gales prior to the incident on July 25, 2005. We find the judgment of the trial judge to be sound, and we do not find that he abused his disei*etion by allowing the testimony.
 

 ¶ 32. Also, against Gales’s objection, the jury learned that he had been convicted of virtually the same crime in Arkansas. We will discuss the admission of this evidence further under issue four, but it was certainly a fact that the jurors had before them when they were weighing the evidence.
 

 ¶ 33. Finally, in testimony that appears quite damaging, Gales testified that a methamphetamine addict would seek to get to know the methamphetamine “cook” or dealer, rather than someone “on a street corner,” in order to attain “better” drugs at a cheaper price. He acknowledged that he was an addict, and that was how he came to know Horn and her boyfriend — a methamphetamine “cook.” The jury heard Gales admit that he and Horn were
 
 on their way
 
 to meet this “cook.” We find ample evidence in the record to verify that the jury’s verdict is not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Accordingly, this issue is without merit.
 

 
 *76
 
 III. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED GALES’S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT (JNOV).
 

 ¶ 34. The standard of review when considering the sufficiency of evidence is well settled:
 

 [When] considering whether the evidence is sufficient to sustain a conviction in the face of a motion for a directed verdict or for a judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction. However, this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 

 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005) (internal citations and quotations omitted). “Jury verdicts will not be disturbed except under the most dire of circumstances.”
 
 Brown,
 
 995 So.2d at 701(¶ 8) (citation omitted).
 

 ¶ 35. The cornerstone of Gales’s argument is that he was not physically in possession of the pills containing pseu-doephedrine and/or ephedrine. The fact that the pills were not found on Gales’s person, as they were on his companion, does not defeat the State’s assertion that he was in possession of the pills. The supreme court has held that:
 

 What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of “possession” is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.
 
 It need not be actual physical possession.
 
 Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
 

 Curry v. State,
 
 249 So.2d 414, 416 (Miss.1971) (emphasis added).
 

 ¶ 36.
 
 In Dampeer v. State,
 
 989 So.2d 462, 465(¶ 11) (Miss.Ct.App.2008), a case which is analogous to the case at bar, the police witnessed the defendant throw away a pill bottle containing drugs after he saw the police officer coming toward him. The police officer retrieved the bottle within minutes as well as
 
 observed the actions of the defendant. Id.
 
 This Court found that the police officer’s observance of the defendant’s behavior was legally sufficient to find that the defendant had been in possession of the drugs, although the defendant was not in possession of the drugs at the time he was apprehended.
 
 Id.
 
 at (¶ 12). The same is true in the case at bar.
 

 ¶ 37. Bienvenue established that Horn had purchased pseudoephedrine at three or four pharmacies. Officer Riggs encountered Gales and Horn right after they left the Walgreens where Bienvenue worked. Officer Riggs observed the frenetic movements happening between Gales and Horn inside the vehicle after they knew that Officer Riggs was following them, and the
 
 *77
 
 pills and their empty packages were found in the vehicle immediately after Gales and Horn exited the vehicle. Also, Horn, who was seated beside Gales in the vehicle, was found with a plastic bag containing approximately 300 pills stuffed down the front of her pants. Just as in
 
 Dampeer,
 
 in the case at bar there were sufficient facts to warrant a finding that Gales was not only aware of the presence of the cold medicine containing the pseudoephedrine and/or ephedrine, but also, he was intentionally and consciously in possession of it.
 

 ¶ 38. We further address the conflicting testimonies of Gales and the police officers. Not one, but three police officers testified that Gales admitted his participation in the pill-buying scheme. However, Gales later disallowed his statements to Officers Riggs, May, and Baggett and, in essence, accused the officers of either poor memory or dishonesty. Therefore, we must determine whether the officers’ testimonies maintained them credibility and competency, and whether the testimonies were legally sufficient to prove the elements of the crime for which Gales was charged.
 

 ¶ 39. In
 
 Buie v. State,
 
 761 So.2d 892 (Miss.Ct.App.2000), which involves constructive possession and a disputed confession, is applicable to the case at bar. After drugs, weapons, and large sums of cash were discovered in what was believed to be Buie’s bedroom, Buie turned himself in to police and confessed that the drugs were his.
 
 Id.
 
 at 893 (¶¶ 2-3). Buie later denied the confession.
 
 Id.
 
 at (¶ 3). This Court stated that “Buie’s attack on [the] [d]etec-tive’s ... veracity does not remove her testimony from the realm of competent evidence; instead, it conjures a credibility issue on the worth of her testimony.”
 
 Id.
 
 at 894(¶ 10). We went on to state that “[t]he jury has the prerogative to pass upon the weight and worth of all the testimony.”
 
 Id.
 
 (citation omitted). Just as in
 
 Buie,
 
 the jury had the opportunity to weigh all of the testimony. Obviously, the jury resolved the credibility issue and conflicting testimony in' favor of the police.
 

 ¶ 40. Considering the evidence in the light most favorable to the State, we find the evidence was legally sufficient to convict Gales of both possessing illegal amounts of pseudoephedrine with the intent to use them in an unlawful manner and conspiracy to possess pseudoephedrine in violation of Mississippi Code Annotated Section 97 — 1—1(a). Accordingly, this issue is without merit.
 

 IV. WHETHER THE TRIAL COURT ERRED BY ALLOWING EVIDENCE OF GALES’S PRIOR DRUG-RELATED CONVICTION.
 

 ¶ 41. Asserting that the trial judge erred by allowing his “pen pack” into evidence, which verified that Gales was previously convicted of possessing drug paraphernalia with the intent to manufacture methamphetamine, Gales extensively argues that Mississippi Rule of Evidence 609 and
 
 Peterson v. State,
 
 518 So.2d 632, 636 (Miss.1987) require that a trial judge make an on-the-record determination that the probative value of a prior conviction outweighs its prejudicial effect before admitting any evidence of a prior conviction.
 
 [10]
 
 He asserts that the trial judge erred by failing to comply with the
 
 Peterson
 
 on-the-record balancing test.
 
 *78
 
 We do not dispute Gales’s understanding of Rule 609 or
 
 Peterson.
 
 However, his reliance on these authorities is misplaced since the record is clear that the tidal judge allowed the admission of Gales’s past conviction under Mississippi Rule of Evidence 404(b) in order to address the issue of Gales’s knowledge and intent, and not to impeach him under Rule 609 or attack his credibility.
 

 ¶ 42. “Evidentiary issues are decided under an abuse of discretion standard.”
 
 Bone v. State,
 
 914 So.2d 209, 213(¶ 15) (Miss.Ct.App.2005) (citing
 
 Lindsey v. State,
 
 754 So.2d 506, 511(¶ 23) (Miss.Ct.App.1999)). “A case may be reversed based on the admission of evidence only if the admission results in prejudice and harm or the admission affects a substantial right of a party.”
 
 Id.
 
 (citing
 
 Smith v. State,
 
 839 So.2d 489, 495(¶ 8) (Miss.2003)).
 

 ¶ 43. Character evidence is not admissible to prove that one acted in conformity therewith. M.R.E. 404(a). Further, “[e]vidence of another crime or prior bad act is not usually admissible.”
 
 Bone,
 
 914 So.2d at 213(¶ 16) (citing
 
 Ballenger v. State,
 
 667 So.2d 1242, 1256 (Miss.1995)). “However, according to Rule 404(b), evidence of other crimes or bad acts may be admissible to prove identity, knowledge, intent, motive or to prove scienter.”
 
 Id.
 
 (citing
 
 Simmons v. State,
 
 813 So.2d 710, 716(¶ 30) (Miss.2002)).
 

 ¶ 44. If the trial court finds that the evidence is admissible under Rule 404(b), it must still consider whether the evidence passes the Rule 403 filter.
 
 Simmons,
 
 813 So.2d at 716(¶ 33) (citation omitted). Rule 403 states that even “relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”
 

 ¶ 45. In response to Gales’s objection to the admission of evidence of his prior conviction, the State specifically said the evidence of Gales’s prior conviction for conspiracy to possess pseudoephedrine and/or ephedrine with the intent to manufacture methamphetamine was being offered under Rule 404(b) to prove knowledge and intent. Likewise, the record clearly reveals that the trial judge allowed the admission of the evidence under Rule 404(b), and that he performed a Rule 403 balancing test. The trial judge stated the following:
 

 I don’t think it would be disputed by anyone that [the] evidence is prejudicial to Mr. Gales. However, the Court will note under 404(b) that it goes, in the Court’s opinion, even more to the issue of knowledge as to what those pills would be used for and also as to Mr. Gales’[s] intent. The State does have to prove that Mr. Gales knew ... [,] or under circumstances where he reasonably should [have] know[n][,] that it would be used in the unlawful manufacture of a controlled substance. His prior conviction of ... possession with intent to manufacture a controlled substance[,] being the same controlled substance, methamphetamine, ... is absolutely probative of the issues set forth by the State and specifically as to one of the required elements of the offense, which must proven.
 

 Likewise, the ... Court finds under [Rule] 403 that the probative nature of this evidence is not outweighed by its prejudicial effect, and further, given the elements of the crime and what must be proven[,] ... especially ... the intent and knowledge ... [,] the Court finds that the probative value of this evidence
 
 *79
 
 in fact outweighs any prejudicial effect, and it will be allowed.
 

 Despite the trial judge’s analysis, Gales argues that the absence of a limiting instruction to the jury
 
 “alone
 
 should have required exclusion of the prior conviction.” This assertion is incorrect. “[T]he Mississippi Supreme Court [has] abandoned the requirement that trial judges issue a sua sponte limiting instruction when evidence is admitted for a limited purpose.”
 
 Dao v. State,
 
 984 So.2d 352, 362(¶ 35) (Miss.Ct.App.2007) (citing
 
 Brown v. State,
 
 890 So.2d 901, 913(¶ 36) (Miss.2004)).
 

 ¶ 46. In
 
 Brown,
 
 the supreme court held that “[t]he burden should properly be upon the trial counsel to request a limiting instruction.”
 
 Brown,
 
 890 So.2d at 913(¶ 36). Mississippi Rule of Evidence 105 states: “When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court,
 
 upon request,
 
 shall restrict the evidence to its proper scope and instruct the jury accordingly.” (Emphasis added). “The rule clearly places the burden of requesting a Rule 404(b) limiting instruction upon counsel.”
 
 Brown,
 
 890 So.2d at 913(¶ 36). Moreover, the supreme court has recognized that “[i]n many instances a limiting instruction from the bench can actually focus a jury’s attention on the sensitive testimony.”
 
 Id.
 
 at (¶ 35). “[I]t is not per se prejudicial to a defendant if a jury simply hears an isolated instance of a crime or bad act in the course of a trial.”
 
 Id.
 

 ¶ 47. Additionally, the State told the jury during its closing argument that the jury “[could] use [Gales’s] previous conviction to help establish that he knew or should have known what those pills were going to be used for.” Gales’s argument that the jury could do nothing but use this evidence as proof that Gales committed the crime in the instant case, is unsupported. Furthermore, the evidence contained in Gales’s “pen pack” was not the first mention of Gales’s prior experience with the law. Gales testified that he became uneasy after Horn left the second Walgreens without her cancer medication because he “had been in trouble before.” He also acknowledged that Arkansas had revoked his parole after he was arrested in Mississippi because of the incident in the instant case. Gales testified: “I turned myself in in Arkansas because they revoked my parole and probation because I caught charges up here. So I’ve [served] ... ten months in the county jail, [and] six months in [an] Arkansas prison.”
 

 ¶ 48. The jury was alerted to Gales’s legal history before they retired to deliberate with documentation of his prior conviction in hand. Moreover, although Gales objected to the evidence, he did not request a limiting instruction, so this issue is procedurally barred, as it was not initially raised at the trial court level.
 
 Dao,
 
 984 So.2d at 362(¶ 35) (citing
 
 Field v. State,
 
 856 So.2d 492, 493(¶ 5) (Miss.Ct.App.2003)). This issue is without merit.
 

 ¶ 49. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF COUNT I, CONSPIRACY TO POSSESS 250 DOSAGE UNITS OF PSEUDOEPHEDRINE AND/OR EPHEDRINE, AND SENTENCE AS A HABITUAL OFFENDER OF FIVE YEARS, AND COUNT II, UNLAWFUL POSSESSION OF PSEU-DOEPHEDRINE AND/OR EPHEDRINE, AND SENTENCE OF FIVE YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $1,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
 

 
 *80
 
 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Testimony established that there were actually 307 pills found in Gales’s companion’s possession or in the vehicle occupied by Gales. Mississippi Code Annotated section 41-29 — 313(2)(c)(i) (Rev.2005) makes it unlawful for an individual to purchase, possess, transfer, or distribute 250 dosage units of pseu-doephedrine with the intent that they be used to unlawfully manufacture methamphetamine.
 

 [2]
 

 . At trial, it was intimated that Gales and Horn stopped at other Horn Lake stores and/or pharmacies, but Gales denied such action.
 

 [3]
 

 . The record does not reflect Officer Fikes's first name.
 

 [4]
 

 . Defendants must be informed of the right to consult with an attorney before and during questioning and the right against self-incrimination prior to questioning by police; defendants must not only understand these rights, but they must voluntarily waive those rights.
 
 Miranda v. Arizona,
 
 384 U.S. 436, 467-75, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Officer Riggs and Officer Shawn May testified that they actually read Gales and Horn their
 
 Miranda
 
 rights from a small white card they carried in their wallets.
 

 [5]
 

 . Wal-phed is a cold and/or allergy medicine that contains pseudoephedrine and/or ephedrine.
 

 [6]
 

 . Mississippi Code Annotated section 41-29-313 makes possession of precursor drugs or chemicals unlawful
 
 if
 
 the person in possession of the precursors intends to use them to manufacture methamphetamine.
 
 See Green v. State,
 
 880 So.2d 377, 380(¶ 11) (Miss.Ct.App.2004). Section 41-29-313 lists the types of drugs or chemicals which are considered precursor drugs, and pseudoephedrine and/or ephedrine are among the items listed. “The term 'precursor drug or chemical’ means a drug or chemical that, in addition to legitimate uses, may be used in manufacturing a controlled substance....” Miss.Code Ann. § 41-29-313(1)(b).
 

 [7]
 

 . We do not set out to survey all of the states that have enacted similar precursor statutes, but it is apparent that Officer Hodges was correct in his testimony concerning the changing laws within the region around the time Gales and Horn were arrested. We look at the law in some of the states surrounding Arkansas — Gales’s home state. Arkansas Code Annotated section 5-64-1101 (2005) states in part: "It is unlawful for any person to possess more than five grams (5g) of ephedrine or nine grams (9g) of pseudoephed-rine or phenylpropanolamine, or their salts, optical isomers, and salts of optical isomers, alone or in a mixture”; section 5-64-1102 addresses the possession of pseudoephedrine with the intent to manufacture methamphetamine; and section 5-64-1103 regulates the sale of pseudoephedrine and/or ephedrine.
 

 Likewise, Tennessee enacted the Meth-Free Tennessee Act of 2005, and Tennessee Code Annotated sections 39-17-431 and 39-17-433 (2005) regulate the sale of pseudoephedrine and ephedrine precursors, as well as making the possession of the products, with the intent to utilize them in the production of methamphetamine, illegal. Oklahoma Statute Annotated title 63 sections 2-332 and 2-333 were enacted in 2002 and amended in 2003. Louisiana's precursor statute, Louisiana Revised Statute Annotated section 40:962.1.2 (2005) has been repealed by Louisiana’s Legislative Act No. 314 (2009). However, the Act does not eliminate or minimize the efforts of the legislature to prevent the possession of these precursors with the intent to manufacture methamphetamine. Rather, the Act enhances those efforts by legislating that there be a
 
 *73
 
 central computerized database to monitor the sale of pseudoephedrine and/or ephedrine throughout the state. It is clear, there were changes in many states' laws during or around 2005, and the legislative war on methamphetamine continues.
 

 [8]
 

 . Officer Riggs testified that Gales told him dial Horn was his girlfriend, but Gales denied that statement at trial.
 

 [9]
 

 . Mississippi Code Annotated section 41-29-315 (Rev.2005) establishes restrictions on the purchase and sale of certain methamphetamine precursors, as well as the penalties that may be assessed for violations of this section. Section 41 — 29—315(2)(a) provides that "[a] retail establishment or individual shall not transfer, sell, deliver, distribute, dispense or provide to a customer in a single retail sales transaction: (i) More than two (2) packages of any compound, mixture or preparation containing pseudoephedrine or ephedrine.’’ Section 41-29-315(4) states that ''[n]o retailer may sell to any person any product or products containing pseudoephedrine or ephedrine unless the retailer requires the purchaser to display photo identification in order to complete the purchase.”
 

 [10]
 

 . The factors that a trial judge should consider when ruling on the admissibility of evidence under Mississippi Rule of Evidence 609 are: (1) the impeachment value of the prior crime (2) the point in time of the conviction and the witness’ subsequent history (3) the similarity between the past crime and the charged crime (4) the importance of the defendant's testimony, and (5) the centrality of the credibility issue.
 
 Peterson,
 
 518 So.2d at 636 (citation omitted).