GRIFFIS, P.J.,
for the Court:
¶ 1. Tazarius Cooper appeals his conviction for possession of ecstasy with the intent to distribute, transfer, or sell. In this appeal, Cooper argues it was error for the court to: (1) deny his motion to suppress evidence, and (2) deny his motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. We find no error and affirm.
FACTS
¶ 2. Cooper was indicted for the possession of ecstasy, a Schedule I controlled substance, with the intent to sell, barter, transfer, or deliver to another, in violation of Mississippi Code Annotated section 41-29-139(a)(l) (Rev.2009).
¶ 3. The State presented three witnesses: Detectives Joe Edney and Chari-ton Smith of the Greenville Police Department, and Allison Convide, a forensic scientist for the Mississippi Crime Laboratory.
¶ 4. Det. Edney testified that on July 12, 2012, a concerned citizen phoned the Greenville Police Department’s Special Operations Unit to complain about illegal-narcotics activity at the 500 block of Union Street in Greenville. This was an area known for heavy drug trafficking. Lieutenant Redmond received the complaint and communicated it to Det. Edney. Lt. Redmond stated that the caller complained that “young men, young black men, are standing out on sidewalks, corners, selling drugs.” Det. Edney and Det. Smith went to investigate the tip. Det. Edney testified that they arrived at the scene in a black Ford F-250, flashed the blue lights, and exited the vehicle. He recognized the house and knew the owner of the house, who was not Cooper. According to Det. Edney, the house was very decrepit and had holes everywhere. Det. Edney had previously reported the house to the housing authority, and it was declared inhabitable.
¶ 5. Det. Edney testified that before he exited the vehicle, he saw Cooper and Cooper’s friend, Dennis Wright, standing next to Cooper. After Det. Edney commanded the two individuals not to move, Wright complied. Cooper ran. Cooper then forced himself into the door of the house. Det. Edney followed in pursuit of Cooper. Det. Edney observed Cooper throw a clear bag with a blue substance into a hole in the wall from outside the front steps of the house. Det. Edney claimed that he could see into the living room and observe Cooper’s actions, because the drywall was missing. Det. Edney then detained Cooper and field tested the twenty-one blue, dolphin-imprinted pills in the clear bag. The pills tested positive for ecstasy. Det. Edney arrested Cooper.
*1223 ¶ 6. Det. Edney also testified that he charged Cooper with possession with intent to distribute. Det. Edney reasoned that, based on his knowledge, the number of pills found in Cooper’s possession would be inconsistent with personal use. Det. Edney further testified, after being questioned by defense counsel, that items such as scales and plastic baggies were not necessary for the sale of ecstasy. Ecstasy pills are handed out individually when sold.
¶ 7. During a pretrial hearing on Cooper’s motion to suppress the evidence of the ecstasy pills, which claimed the evidence was the fruit of an illegal search, Det. Edney gave similar testimony. Based on Det. Edney’s testimony at the pretrial hearing, and after clearing up the factual dispute as to whether Det. Edney stood outside or inside the house when he witnessed Cooper throw the clear bag into the wall (he was outside of the house), the trial judge denied Cooper’s motion to suppress the ecstasy pills. The court held that the pills were not the fruits of an illegal search by Det. Edney, due to a lack of a search warrant, an arrest warrant, or exigent circumstances.
¶ 8. Det. Smith testified at trial that he responded to the anonymous tip with Det. Edney on the day in question. He claimed, as Det. Edney testified, that they arrived at the scene in a black Ford F-250 and activated their blue police lights. As they exited the vehicle, Det. Edney commanded Cooper and Wright to stop. Det. Smith detained Wright, while Det. Edney pursued Cooper as he ran into the house. Det. Smith testified that he saw Cooper run into the house. However, he did not enter the house himself.
¶ 9. Conville testified that she performed a color test and instrumental-analysis test on the twenty-one pills recovered at the crime scene, and the pills tested positive for ecstasy.
¶ 10. In his own defense, Cooper testified at trial that he walked down the street to his friend’s home located on the 500 block of Union Street. Cooper, along with Wright and Wright’s nephew, sat outside of the home. Cooper then walked inside of the home to use the bathroom. Instead of using the bathroom, however, Cooper decided to retrieve his Black & Mild cigar and then go back outside. After the owner of the house told him that the cigar was on the kitchen table, Cooper grabbed the cigar and began walking through the kitchen to go back outside. As he was on his way outside, he could see a white Dodge Charger pull into the driveway of the home. He testified that he did not see any police lights on the vehicle.
¶ 11. Cooper testified that before he could walk outside, Det. Edney met him at the door and aimed a loaded gun at him just as Cooper was explaining that the home was not Cooper’s residence. Det. Edney did not have a search or arrest warrant for Cooper. Cooper testified that Det. Edney entered the home without permission from the owner, slammed Cooper to the kitchen floor, and searched all of the cabinets and throughout the house. After a few moments, Det. Edney returned with a bag containing twenty-one dolphin-imprinted pills that he said he recovered from a hole in the wall in the living room. Cooper denied that he owned the pills or the house. Nevertheless, Det. Edney arrested Cooper and walked him back outside. Det. Edney then field tested the pills. They tested positive for ecstasy.
¶ 12. Wright also testified that he was with Cooper and his nephew on the day of Cooper’s arrest. They were sitting outside of the house at the 500 Block of Union Street. Wright claimed that Cooper went in the house to use the bathroom before the officers came in a white, unmarked Dodge Charger. Wright then claimed that *1224 Cooper was getting ready to come out of the house when the officers arrived. He stated that they both heard the officers command them to stop. He also testified that Det. Edney went into the house to pursue Cooper as Det. Smith detained him. Wright claimed that Det. Edney arrested Cooper afterwards. Wright also testified as to the decrepit condition of the residence, particularly that there were holes in the walls of the house.
¶ 13. The jury returned a verdict that found Cooper guilty of possession of ecstasy with intent to distribute pursuant to Mississippi Code Annotated section 41-29-139(a)(1) (Rev.2009). Cooper was sentenced to serve a term of seven years in the custody of the Mississippi Department of Corrections, with two years to serve followed by five years of post-release supervision. The circuit court ordered the sentence to run consecutively to any sentence he is currently obligated to serve. Cooper subsequently filed a motion for a JNOV or, in the alternative, a new trial. The circuit court denied the motion.
ANALYSIS

1. Motion to Suppress Evidence

¶ 14. Cooper argues in his first issue on appeal that the trial court erred when it denied his motion to suppress the bag containing the ecstasy pills. Cooper claims that the bag was the fruit of an illegal search and seizure that violated his Fourth Amendment rights.
¶ 15. This Court applies a mixed standard of review to Fourth Amendment suppression-of-evidence inquiries. Dies v. State, 926 So.2d 910, 917 (¶ 20) (Miss.2006). “Determinations of reasonable suspicion and probable cause should be reviewed de novo.” Id. “However, this Court is restricted to a de novo review of the trial judge’s decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards.” Id. Further, the Court reviews a trial court’s decision to admit or exclude evidence following a motion to suppress under the abuse-of-discretion standard. Lee v. State, 100 So.3d 982, 984 (¶8) (Miss.Ct.App.2012) (citation omitted).
¶ 16. The basis for the alleged violation of Cooper’s Fourth Amendment rights is two-fold. First, Cooper contends that the unreliability of the anonymous tip that led to his arrest resulted in a lack of reasonable suspicion for an investigatory stop or probable cause for his arrest. Cooper asserts that the anonymous call to the Greenville Police Department about drug activity at his location “lacked any detail that could be corroborated by independent investigation.” The anonymous tip, according to Cooper, provided “very general information” that offered no detail beyond location and lacked specificity as to the criminal activity that had occurred. Cooper contends that this lack of specificity would indicate that the “tip was either based on second-hand knowledge or had no basis of knowledge and was just a rumor.” Because such a tip lacks the detailed and predictive information to pass the Gates test for reliability, Cooper contends, the officer lacked the reasonable suspicion or probable cause to permit the warrantless search and seizure. Illinois v. Gates, 462 U.S. 213, 238,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
¶ 17. Second, Cooper contends that without reasonable suspicion, probable cause, a valid search or arrest warrant, or exigent circumstances, it was unlawful for Det. Edney to make a warrantless entry into the residence to arrest Cooper and seize the bag of ecstasy. Specifically, Cooper argues that exigent circumstances, in the absence of probable cause or a valid warrant, would be the only lawful means *1225 by which Det. Edney could have made the warrantless entry into the residence to pursue him. Cooper further contends that the factual circumstances of his pursuit and arrest do not give rise to the exigency exception.
¶ 18. We find that the anonymous tip was sufficient to establish reasonable suspicion for an investigatory stop. Additionally, Det. Edney’s personal observation of Cooper’s actions gave him probable cause and exigent circumstances for Cooper’s subsequent arrest and warrantless entry into the residence for that arrest.
¶ 19. This Court has found that an anonymous tip can provide reasonable suspicion to make an investigatory stop if suitably corroborated to establish its reliability. Williamson v. State, 876 So.2d 353, 355 (¶ 10) (Miss.2004) (quotation marks omitted). Reasonable suspicion for an investigatory stop may be based on the arresting officer’s personal observations or an informant’s tip if indicia of reliability are present. Id. at (¶ 11). Further, an anonymous tip can establish probable cause for a search warrant if it passes the Gates test. Lee v. State, 435 So.2d 674, 676-77 (Miss.1983). The United States Supreme Court in Gates articulated a “totality of the circumstances” test to determine when information obtained through an anonymous tip can establish the probable cause for a search or arrest warrant, which is necessary to protect citizens from unreasonable searches and seizures. Gates, 462 U.S. at 238, 103 S.Ct. 2317. The “totality of the circumstances” test considers (1) veracity, (2) reliability, and (3) basis of knowledge. Id. at 233, 103 S.Ct. 2317.
¶ 20. Here, we decline to undergo a full Gates analysis to determine probable cause, because we find that the anonymous tip was sufficient to provide reasonable suspicion for Det. Edney to make an initial investigatory stop. This Court’s ruling in Baker v. State, 991 So.2d 185 (Miss.Ct.App.2008), is dispositive of this issue and analogous to the facts in the instant case.
¶ 21. In Baker, this Court held that a call by an anonymous informant about several people in a home “cooking drugs,” which led to the seizure of the necessary ingredients for methamphetamine and an arrest for the illegal possession of methamphetamine as well as the intent to distribute, was reliable enough to provide reasonable suspicion that warranted further investigation by the police, which led to the lawful seizure and arrest. Id. at 187 (¶ 7). The court stated that the anonymous tip contained sufficient evidence to warrant further investigation because (1) the caller gave fresh information about the incident in question, as she had just left the residence when she saw people cooking drugs; and (2) the deputies were familiar with Baker’s address because they had responded to drug-related and domestic incidents at his residence in the past. Id. This Court emphasized that some anonymous tips would either require no police response or warrant further investigation before a forcible stop of a suspect would be authorized. Id. at (¶ 8) (citation omitted).
¶ 22. Further, this Court held that “an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest.” Id. (quoting Linson v. State, 799 So.2d 890, 893 (¶10) (Miss.Ct.App.2001)). Therefore, this Court found that Baker’s assertion that the deputies should not have responded to the anonymous tip to be without merit, because the trial judge did not abuse his discretion, as this case “was an instance that required a further investigation [of the anonymous tip].” Id.
¶ 23. Here, as in Baker, Det. Edney lawfully investigated the activity at the 500 *1226 block of Union Street based on the anonymous tip and other circumstances, as the circumstances warranted further investigation. It is not disputed, based on the record, that the anonymous tip stated that young black males were on the corner of the 500 block of Union Street selling drugs. The tip was based on fresh, firsthand information witnessed by the anonymous caller, who gave details about the race and sex of the suspects along with the criminal activity going on at the particular location on Union Street. Det. Edney testified that he was familiar with this block because it was known for heavy drug trafficking, and he had responded to numerous narcotics complaints at this block in the past. Based on the anonymous tip and his knowledge of the area’s history of drug trafficking, Det. Edney and Det. Smith went to further investigate the tip. Once they arrived on the scene, not only did they see two black males at the corner, but Det. Edney immediately recognized Cooper from previous narcotics complaints in the area. Therefore, the combination of the information from the anonymous tip, the block’s known reputation for heavy drug trafficking, and Det. Edney’s recognition of Cooper from previous drug complaints corroborated the anonymous tip and gave the officers reasonable suspicion to make an investigatory stop. And that investigatory stop was legally justified, as in Baker, to resolve a potential criminal situation.
¶ 24. Furthermore, after the officers attempted to investigate the matter by asking the suspects to stop in order to question them, and Cooper suddenly fled into the house, it was Cooper’s actions, as witnessed by Det. Edney, that gave him exigent circumstances and probable cause to make a warrantless entry into the home and arrest Cooper. Cooper argues that the anonymous tip was insufficient to give probable cause for his arrest. However, the anonymous tip was sufficient to give reasonable suspicion for an investigatory stop. It was when Cooper fled to the house, broke in, and threw the bag of ecstasy pills inside the wall, as witnessed by Det. Edney, that gave Det. Edney exigent circumstances for the warrantless entry into the home and probable cause for the arrest.
¶ 25. Under Mississippi law, a police officer can arrest an offender without a warrant if an offense is being committed by the offender in his presence, or the officer has reasonable grounds to suspect the offender has committed a felony offense. Miss.Code. Ann. § 99-3-7(1) (Supp.2012).[1] Further, an officer has the right to enter a house in hot pursuit of a defendant to arrest him, and may use force if necessary to enter the house. Miss. Code Ann. § 99-3-11 (Rev.2007).[2] Hot *1227 pursuit of a suspected offender, the possibility that the evidence of a crime may be destroyed or removed, and danger to the lives of officers or others in the residence are the types of exigent circumstances that may justify a warrantless entry into a residence to pursue an offender. Elkins v. McKenzie, 865 So.2d 1065, 1084 (¶58) (Miss.2003) (citing United States v. Capote-Capote, 946 F.2d 1100, 1102-3 (5th Cir.1991)). And when officers are authorized to enter a dwelling under exigent circumstances, they are allowed to seize evidence in plain view during the course of the search. Baker v. State, 802 So.2d 77, 80 (¶ 10) (Miss.2001).
¶ 26. Here, we find that Det. Edney had both exigent circumstances and probable cause to make the warrantless entry into the residence and arrest Cooper after investigating the reliable tip concerning drug activity and going in hot pursuit of Cooper after he fled from lawful questioning about that tip. When Det. Edney personally observed Cooper as he tossed the clear bag to the wall inside the house, Det. Edney had reasonable grounds, based on the circumstances, to suspect that Cooper had committed the offense of illegal possession of drugs. His suspicions were confirmed when he entered the house, detained Cooper, and found the bag in the wall and confirmed it was ecstasy.
¶ 27. Further, Det. Edney’s search and seizure of the ecstasy were lawful. This Court has “consistently held that no warrant is necessary to search for drugs when exigent circumstances exist that make the police believe that the evidence will be destroyed.” Williams v. State, 892 So.2d 272, 278 (¶16) (Miss.Ct.App.2004) (citation omitted). Further, this Court in Williams found that when the appellant discarded the drugs before police detained him, he “abandoned it and deprived himself of any right to privacy.” Id. at (¶ 15) (citations omitted). Like the appellant in Williams, Cooper deprived himself of any privacy by attempting to discard the illegal drugs as well as giving Det. Edney reasonable concern that the evidence of the illegal drugs would be destroyed.
¶ 28. Det. Edney’s testimony as to the events of Cooper’s arrest, as corroborated by Det. Smith, demonstrates Cooper had reasonable suspicion to make the initial investigatory stop, and that both exigent circumstances and probable cause existed to make the warrantless entry into the residence, arrest Cooper, and seize the bag of ecstasy. The ecstasy was the fruit of a lawful search and seizure and was properly introduced into evidence at trial. Therefore, we find this issue has no merit.

2. Motion for a JNOV or, in the Alternative, a New Trial

¶ 29. In his next issue on appeal, Cooper claims that the circuit court erred when it failed to grant his motion for a JNOV or, in the alternative, a new trial, because the State failed to prove beyond a reasonable doubt the two elements of the indicted offense. Particularly, Cooper claims that the State failed to prove beyond a reasonable doubt that (1) Cooper was in actual or constructive possession of the ecstasy, and (2) Cooper had an intent to distribute and sell the ecstasy.
¶ 30. We find, however, that the evidence presented against Cooper was legally sufficient to prove beyond a reasonable doubt that Cooper was guilty of the indicted offense of possession of ecstasy with the intent to distribute. And the guilty verdict was not against the overwhelming weight of the evidence, as Cooper contends.
¶ 31. “Motions for a directed verdict and judgment notwithstanding the verdict challenge the legal sufficiency of the evidence, and the standard[s] of review *1228 for a directed verdict and judgment notwithstanding the verdict are identical.” Barfield, v. State, 22 So.3d 1175, 1185 (¶ 34) (Miss.2009) (quoting Nelson v. State, 10 So.3d 898, 905 (¶ 29) (Miss.2009)). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense exist-edId. (quoting Jones v. State, 904 So.2d 149, 153 (¶12) (Miss.2005)). Evidence that fails to meet this test is insufficient for conviction. Id. The sufficiency of the evidence is determined by examining whether “any rational trier of fact,” after “viewing the evidence in light most favorable to the prosecution,” could have “found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Moore v. State, 996 So.2d 756, 760 (¶ 12) (Miss.2008)). This Court accepts all evidence that is favorable to the State as true, which includes inferences reasonably drawn from the evidence in favor of the State. Id. at 1186 (¶ 34).
¶ 32. This Court reviews a trial court’s denial of a motion for a new trial based on an abuse-of-discretion standard. Butler v. State, 102 So.3d 260, 268 (¶ 23) (Miss.2012). Similar to the trial court’s standard, this Court has the authority to grant a new trial when the court determines, in its discretion, that the verdict “is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice.” Id. (citing Jackson v. State, 90 So.3d 597, 605 (¶31) (Miss.2012)). “If, upon evaluating the evidence in the light most favorable to the verdict, this Court finds itself in disagreement with the jury’s verdict, the proper remedy is to grant a new trial.” Patterson v. State, 37 So.3d 702, 704 (¶ 10) (Miss.Ct.App.2010).
¶ 33. Mississippi law prohibits the possession of an illegal, controlled substance with the intent to sell, manufacture, or distribute that illegal substance. Miss. Code Ann. § 41-29-139(a)(l) (Supp.2012). A defendant may be convicted of a drug-possession offense if he “was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.” Dampeer v. State, 989 So.2d 462, 465 (¶9) (Miss.Ct.App.2008) (citation omitted). Possession of an illegal drug may be actual or constructive. Id. at (¶ 10) (citation omitted). Actual and constructive possession both include the elements of awareness and conscious intent to possess. Id. at (¶ 9).
¶ 34. Further, actual possession can be established if an officer witnesses the defendant tossing an object later found to be drugs. Id.; see also Boyd v. State, 634 So.2d 113, 116 (Miss.1994); Lee v. State, 767 So.2d 1025, 1027 (¶8) (Miss.Ct.App.2000). An officer’s testimony stating that he observed the defendant throw the drugs is sufficient to show “actual” possession. Lee, 767 So.2d at 1027 (¶8).
¶ 35. Based on the applicable law, the State provided sufficient evidence to prove that Cooper was in actual possession of the ecstasy. Det. Edney testified that he witnessed Cooper throw a clear bag with a blue substance to the wall of the residence while Det. Edney was just outside of it. Det. Smith corroborated Det. Edney’s testimony by stating that Det. Edney indeed pursued Cooper into the residence after he ignored warnings to stop. After Det. Edney detained Cooper, he field tested the twenty-one blue pills in the clear bag, and they tested positive for the drug ecstasy. Det. Edney’s field-test conclusion that the pills were ecstasy was confirmed by Conville of the Mississippi Crime Lab. Therefore, the State met its burden of proof beyond a reasonable doubt to show actual possession of the ecstasy by Cooper.
*1229 ¶ 36. Cooper argues that Det. Edney’s testimony alone is the only evidence of possession, and such testimony was insufficient to prove the element of possession beyond a reasonable doubt. Particularly, Cooper argues that his along with Wright’s testimony as to the events of his arrest contradicted Det. Edney’s testimony, and the confusion over Det. Edney’s testimony at the pretrial hearing on whether he was inside or outside the residence when he witnessed Cooper throw the drugs inside the wall further puts the sufficiency of his testimony as to evidence of possession into question.
¶ 37. This Court, however, has consistently held that the sole testimony of an officer who witnessed the defendant toss or discard an illegal drug is sufficient to prove possession beyond a reasonable doubt, as it is solely within the province of the jury to resolve any conflicts in testimony and to determine witness credibility. Griffin v. State, 859 So.2d 1032, 1033-34 (¶¶ 2-4) (Miss.Ct.App.2003); see also Patterson,, 37 So.3d at 704 (¶ 12) (finding sufficient evidence to sustain a possession-of-cocaine conviction where the officer testified that he witnessed the defendant drop an object, that he never lost sight of the defendant, and that the recovered object contained an illegal drug); Gales v. State, 29 So.3d 65, 77 (¶ 3) (Miss.Ct.App.2009) (officer testimony of the defendant’s actions was sufficient to find that the defendant was in possession of illegal drugs even though the drugs were not found on him when he was apprehended).
¶ 38. Here, the jury heard Det. Edney’s testimony at trial that he witnessed Cooper throw the drugs to the wall from outside of the residence. The jury heard this testimony and other witness testimony for the State, along with the testimony of the defense witnesses, weighed the testimony, and properly found Cooper guilty of the crime. Therefore, the evidence of Det. Ed-ney’s testimony was sufficient to prove that Cooper was in actual possession of the ecstasy.
¶ 39. Finally, the State’s evidence presented was sufficient to prove that Cooper had an intent to distribute the ecstasy. This Court has held that a “large quantity of a controlled substance can alone establish an intent to distribute.” Blissett v. State, 754 So.2d 1242, 1244 (¶ 10) (Miss.2000) (citations omitted). Officer testimony that the quantity of drugs found in the defendant’s possession was inconsistent with personal consumption is sufficient to establish an intent to distribute the drugs. Id. at 1244-45 (¶ 11); see also Bond v. State, 42 So.3d 587, 593 (¶ 25) (Miss.Ct.App.2010) (officer testimony that the quantity of methamphetamine discovered in the defendant’s residence was “more that what most users would have for personal use,” was sufficient to establish that the methamphetamine was intended for distribution and not mere personal use, thus supporting a conviction for possession of methamphetamine with the intent to distribute).
¶ 40. Det. Edney testified, based on his personal knowledge, that the twenty-one ecstasy pills found on Cooper, in an area known for heavy drug trafficking, was an amount inconsistent with personal consumption. Further, he testified that any other evidence of drug distribution, such as scales and baggies, was unnecessary because ecstasy is distributed by personally handing pills to individuals. Thus, Det. Edney’s testimony, combined with the totality of the factual circumstances, including Cooper’s presence in an area known for heavy drug trafficking and his flight from questioning by Det. Edney, was sufficient to prove the element of “intent to distribute,” as well as the element of possession, beyond a reasonable doubt. His testimony is not contrary to the overwhelming weight of the evidence. A rea *1230 sonable juror could have found Cooper guilty of possession with intent. Therefore, we find that this issue is without merit.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF POSSESSION OF ECSTASY WITH INTENT TO DISTRIBUTE AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS TO SERVE FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCE TO RUN CONSECUTIVELY TO ANY OTHER SENTENCE CURRENTLY BEING SERVED, AND TO PAY A $3,000 FINE AND $500 TO THE CRIME VICTIMS’ COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE, C.J., BARNES, ISHEE, CARLTON, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., ROBERTS AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT.

. Mississippi Code Annotated section 99-3-7(1) provides:
An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested.
And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.

. See also Watts v. State, 305 So.2d 348, 351 (Miss.1974) (holding that an officer who pursued a defendant in an effort to arrest him had the right to enter the house in pursuit of the defendant and to use force, if necessary, to enter the house).